IN RE: THE ESTATE OF BLANCHE N. PETERS, deceased, OTTO M. PETERS, THEODORE PETERS, LOUIS F. PETERS, FLOSSIE MANN, RAYMOND PETERS, HARRISON PETERS, WAYNE PETERS, MARY THROOP, LAURA COOK, HAROLD PETERS and ALTHEA Y. HAFFARD, v. FLORIDA NATIONAL BANK OF JACKSONVILLE.

20 So. (2nd) 487
January 16, 1945

January Term, 1944
Division A

454

*McKay, Macfarlane, Jackson & Ferguson* and *Wm. H. Jackson,* for appellant.

*Rogers, Towers & Bailey* and *C. C. Bailey,* for appellee.

CHAPMAN, C. J.:

The record in this cause discloses that Charles F. Peters and wife, Blanche N. Peters, a childless couple, in about 1922, moved from the State of Iowa to St. Petersburg, Florida, and at the time of their death owned an estate of an approximate value of from $40,000.00 to $50,000,00 which was held as an

estate by the entireties. Charles F. Peters died on April 27, 1939, when about 80 years of age and all the property went to Blanche N. Peters, who died June 7, 1939, at an advanced age, without any known relatives, but the collateral heirs of the late Mr. Peters here contend that under the Florida law they should inherit the property or estate in the absence of known heirs of Blanche N. Peters.

The Circuit Court of Pinellas County, Florida, on November 18, 1937, adjudged Charles F. Peters an incompetent and appointed Dr. J. A. Strickland of St. Petersburg and the Florida National Bank of Jacksonville curators. The curatorship continued until the death of Charles F. Peters in April, 1939. An accounting was rendered by the curators, which on consideration was approved by the court, and their bondsmen discharged by an appropriate order.

On April 18, 1937, Blanche N. Peters gave her physician, Dr. J. A. Strickland, a power of attorney authorizing him to manage her property. Mr. and Mrs. Peters became acquainted with Dr. Strickland at St. Petersburg in 1934 and the relation of patient and physician existed between them until their death in 1939. Blanche N. Peters gave written directions to an attorney connected with the bank to prepare for her a will in which she made special bequests but the greater portion of the estate by the terms of the will went to Dr. Strickland. A codicil was executed in March, 1938, by which she left her deceased husband's relatives the sum of $1.00 each.

The heirs of Charles F. Peters brought suit in the Federal Court of the Southern District of Florida against Dr. J. A. Strickland, his wife and daughter, and the bank seeking an order to set aside the will and a trust indenture as void for want of capacity on the part of Blanche N. Peters and because of fraud and undue influence on the part of the bank and Dr. Strickland. The Federal District Court held the will and trust deed void and on appeal the decree was affirmed as to the trust deed but reversed as to the will. See Strickland v. Peters, 120 Fed. (2nd) 52. Courts of equity are without power or jurisdiction over the validity of wills because Section 17 of Article V of the Florida Constitution vests in the county

judge jurisdiction of the settlement of estates of decedents, to take probate of wills, to grant letters testamentary, etc. See Pournelle v. Baxter, 142 Fla. 517, 195 So. 163; Crosby v. Burleson, 142 Fla. 443, 195 So. 202.

On July 9, 1941, the Florida National Bank of Jacksonville filed a petition in the County Judge's Court of Pinellas County, Florida, for the probate of the last will and testament of Blanche N. Peters dated November 19, 1937. It was alleged (1) that she died in Pinellas County, Florida, at the age of about 77 years and at the time of her death was seized and possessed of a certain estate situated in said County and of the approximate value of $40,000.00; (2) that decedent left no known blood relatives but named persons claimed to be relatives of Charles F. Peters, her deceased husband; (3) that the will dated November 19, 1937, was published and declared the last will and testament of the decedent in the presence of Claire Bacon and Charles F. Pierce; (4) that the decedent on March 24, 1938, executed a codicil to the aforesaid will in the presence of Claire Bacon, John H. Green and George F. Crocker.

An answer to the petition to probate the aforesaid will was filed by named relatives of Charles F. Peters, deceased, the said Blanche N. Peters having died without known relatives, alleging that the estate by operation of law would pass to them. The answer urged the illegality of the proposed will on various grounds viz: (a) the will was not lawfully executed; (b) the decedent was of unsound mind; (c) the decedent lacked testamentary capacity; (d) that decedent when the alleged will was executed did not have sufficient mental capacity to comprehend the condition of her property; (e) that the decedent was not of sound mind when the will and codicil were executed and therefore was without testamentary capacity; (f) that Dr. J. A. Strickland had exercised undue influence over the decedent for many years prior to the date of execution of the will and codicil; (g) that designated persons collaborated with and assisted Dr. Strickland in obtaining the execution of said will and codicil; (h) that Dr. Strickland was a creditor of the bank and the property of the estate could be used to pay said debt and the bank and Strick-

land collaborated with this objective in view; (i) that fraud was resorted to to obtain the execution of the will and codicil; (j) that for the several reasons advanced the will and codicil are wholly void.

It is further alleged that the deceased left a will dated May 18, 1939; that a copy of the will is by appropriate language made a part of the said answer; that a dismissal of the petition for probate is requested because of the said will. Counsel of record by stipulation agree that the testimony and exhibits introduced into evidence by the parties in the cause pending in the Federal Court shall comprise the testimony and exhibits upon which the cause should be considered and decided in the County Judge's Court of Pinellas County, Florida.

The Honorable Jack F. White, County Judge, heard the cause according to the stipulation of counsel and made 17 separate findings of fact which are concisely and accurately set forth in an order in which he denied the probate of the alleged will and dismissed the petition. Certificates of disqualification of Honorable John U. Bird and Honorable W. T. Hobson, circuit judges, appear in the record. On appeal to the circuit court the order of the county judge's court was reversed and from the order of reversal entered in the circuit court of Pinellas County on appeal has been perfected here.

Section 732.31, Fla. Stats. 1941 (FSA), provides that in all proceedings contesting the validity of a purported will, whether before or after such will is admitted to probate, the burden of proof, in the first instances, shall be upon the proponents thereof to establish, prima facie, the formal execution and attestation thereof, whereupon the burden of proof shall shift to the contestants to establish facts constituting the grounds upon which the probate of such purported will is opposed or revocation thereof is sought. For the decisions construing or interpreting the aforesaid Section see Clara R. Starr v. Wilson, 125 Fla. 536, 170 So. 620; Wartmann v. Burleson, 139 Fla. 458, 190 So. 789; In re Blocks' Estate, 143 Fla. 163, 196 So. 410; In re Aldrich's Estate, 148 Fla. 121, 3 So. (2nd) 856; Watts v. Newport, 149 Fla. 181, 6 So. (2nd) 829.

Counsel for appellants contend that ample evidence appears in the record to establish fraud and undue influence exercised on the testatrix by the late Dr. J. A. Strickland in obtaining the execution of the will here presented; that the findings of fact as made on the part of the County Judge of Pinellas County are clearly sustained by the record and the principle of law enunciated by this Court in the case of Aldrich's Estate, *supra,* is applicable and therefore the conclusion reached by the circuit court should be reversed. That the probate judge did not misinterpret the legal effect of the evidence when considered in its entirety.

It is established that mere confidential relations between a testator and legatee are not alone sufficient to raise a presumption of undue influence so as to impose the burden of proof on the latter. The burden is on a contestant who charges undue influence to prove it, but when confidential relationship between the testatrix and principal beneficiary is shown, a presumption of undue influence arises and then the burden shifts to the proponents to prove that undue influence was not exercised. See Wartmann v. Burleson and Watts v. Newport, *supra.*

Counsel for appellants pose for adjudication questions viz:

"On review by the circuit court of an order of the county judge sitting in probate, the rule of decision is that the circuit court may reverse the county judge only if and when it appears that the county judge misapprehended the legal effect of the evidence as an entirety, or where there is no substantial legal evidence to support the findings of the county judge. Is this rule of decision applicable where the county judge did not see any of the witnesses?"

"A confidential relation existed between the testator and the principal beneficiary in a will, and this beneficiary initiated the proceedings which brought about the execution of the will. Do these facts raise a presumption of fraud and undue influence?"

"A doctor caused his patient, who was an aged widow, to swear falsely in a court of justice. It later developed that the doctor was the chief beneficiary under the widow's will. Did

the fact that the doctor caused her to swear falsely constitute some evidence that she was subject to his dominion and control?"

Answers to the questions propounded are found in an analysis of all the testimony and exhibits appearing in the record. Emphasis by counsel for appellant is placed on the following facts to sustain the conclusions of the county judge's court which was reversed on appeal by the circuit court: (1) Dr. Strickland, in July, 1937, interfered with and stopped the pleasant relations between Mrs. Peters and the relatives of Charles F. Peters; (2) Dr. Strickland's influence over Mrs. Peters in November, 1937, which induced her to swear to a petition containing false averments to obtain the appointment of curators; (3) dominion over Mrs. Peters by Dr. Strickland and Mr. Harbin which compelled her to give false testimony before Judge Hobson on November 18, 1937; (4) Dr. Strickland caused Mrs. Peters to erroneously believe that little property of the estate would be left after payment of bills; (5) Dr. Strickland caused Mrs. Peters to erroneously believe that he would provide for her and Charles F. Peters; (6) Mrs. Peters disliked to sign papers; (7) the will is deceptive and misleading and would have been nugatory had she predeceased her husband; (8) the power of attorney, the curators and the will were conceived and planned by Dr. Strickland and Mr. Harbin; (9) that Dr. Strickland was a creditor of the bank in the amount of several thousand dollars. The bank's claim against Dr. Strickland now appears settled.

The questions propounded by counsel for appellant for adjudication here, coupled with conclusions of fact enumerated *supra* and reflected by the record, stressed both in brief and able oral argument heard at the bar of this Court, each appear to be well answered by the able and thorough opinion of the Honorable Frank A. Smith, Acting Circuit Judge whose judgment and conclusions are challenged on this appeal. We quote from the opinion:

"In his order the county judge appropriately made specific findings upon the facts, setting them out separately in seventeen numbered paragraphs.

"The recitals of findings are substantially correct until the point in No. 6, wherein it is stated that the 'the testimony of Blanche N. Peters in said curatorship proceedings was wavering, contradictory and uncertain and revealed the feeble life purpose and will of the said Blanche N. Peters, which condition the court finds, endured thereafter as long as she lived.'

"Counsel pointed out parts of her testimony as supporting the finding, first her answer of 'uh-Huh' in response to Judge Hobson's question if it was correct that she being his wife was the only known relative by blood or marriage, after previously testifying that he had relatives but had not heard from them for fifty years. While her statement in this respect was not correct, the testimony showing some correspondence with a few of them in recent years, yet I fail to find any other serious fault with such an answer. Her veracity hardly matters here.

"Next there were two questions or practically the same question but in different form, about the ownership of property in Pinellas County. Apparently she did not understand the question at first and as likely as not because she did not sufficiently hear it, or perhaps she was momentarily confused by having the question propounded in varied form, as witnesses frequently are. Again she apparently did not understand the question as to the condition of her health and repeated the phrase 'good health' contained in the amended question. This is apparently another of the frequent instances in which a witness fails to clearly hear the examiner's question and asks that it be repeated. From careful perusal of her testimony I fail to find that it warrants the adverse deductions the county judge drew therefrom. Instead of the record reflecting a feeble life purpose and will which continued throughout, the clear preponderance of the evidence is to the effect that her mind was unusually keen and clear for a person of her age. She was shown to be of positive and strong will and purpose.

"The first evidence in regard to Mrs. Peters making a will was the mention by her and Dr. Strickland of same to Mr. Harbin. The only particulars shown are that it was in

the circuit court chambers or in an adjacent room immediately prior to the hearing in the curatorship proceeding. Mr. Harbin says the substance of the conversation was that Mrs. Peters said she would like to draft a will. As he recalls she had with her a memorandum of specific bequests that she wanted to put in such a will. The next conversation was immediately after the hearing in an ante room. The same three were present, also Mr. Grazier, attorney for the bank. Mrs. Peters gave Mr. Grazier instructions for the preparation, which as Mr. Harbin recalls were in a written memorandum of the specific bequests 'and that after making those bequests I believe that she told him to leave the residue of that to Dr. Strickland.'

"The versions of Mr. Grazier and Mr. Harbin as to this conference are substantially in agreement and according to their testimony the only instructions given were by Mrs. Peters and Mr. Strickland took very little if any part in the conversation.

"The testimony discloses no closer connection of Dr. Strickland with the plan or preparations of the will than in those two occasions. The incident before the hearing appears as nothing more than a mention of the matter of her desire to have a will drafted. The conference occurred after the hearing, and while Dr. Strickland was present throughout same, yet it is not shown that he took any part in same. There is no evidence that he influenced her in the giving of instructions, but it is clear that she alone gave same.

"The authorship of the memorandum is not shown.

"The will was prepared in accordance with the instructions and the next day was executed at her home. Mr. Grazier did not attend the execution of the will and is not certain that he drew it. When handed the questioned instrument he identified it as being the will which he had prepared from instructions by Mrs. Peters. He said that although there was some question whether Mr. Preece or he had drawn the will, yet if Mr. Preece did, it was from the instructions he had obtained from her and gave to Mr. Preece.

"At the execution of the will those present besides Mrs. Peters were Mr. Preece, an attorney at law, Mr. Harbin and

Miss Bacon. At the request of Mr. Harbin, Mr. Preece took the will down to Mrs. Peters for execution. He was accompanied by Mr. Harbin and Miss Bacon. Upon entering when Mr. Harbin undertook to introduce Mr. Preece, Mrs. Peters spoke up and said that she knew him. They had met the previous day at the hearing at which both were present. Mr. Preece offered to read the document to Mrs. Peters but she said she was perfectly able to read it herself. After she read it, he asked her if she understood it or if he should explain anything to her to which she replied, 'No, that is exactly what she wanted.' While Mrs. Peters is shown to have had a natural anxiety at the time about her financial condition because of the condition of her husband and the expense of caring for him, yet I fail to find that the record reflects that she had an obsession, or that her mental condition was induced and actively sustained by Dr. Strickland.

"There is no question of the fact that Dr. Strickland, the principal beneficiary under the will, occupied a fiduciary relationship toward Mrs. Peters, however, the mere fact that such relationship existed and he was made the principal legatee and devisee under her will is not sufficient to raise the presumption against him to undue influence. According to Justice BROWN in In Re Aldrich's Estate, 3 So. 2nd 858 (text) in most jurisdictions that rule does not apply to wills, unless it clearly appears that the beneficiary not only occupied a confidential or fiduciary relation to the testator, but was also active in procuring the drafting or execution of the will. All of the evidence is to the effect that Dr. Strickland was not present and took no part in its execution. This leaves for consideration only the fact of whether he took part in the preparation or procuring of the will. The only evidence of his having any connection with same is the fact that he and Mrs. Peters were present with Mr. Harbin when the first discussion of the will took place, and, on which occasion Mrs. Peters said that she would like to draft a will and at which she had present the memorandum; also he was present at the conference at which Mrs. Peters gave the instructions. Can it be said that thereby he is shown to have so actively participated in procuring the execution of the will either by

the initiation of the preparation or the preparation itself or the execution of same as to bring him within the rule raising the presumption against him? I think the law should require a more active or definite participation on his part than has been shown. . . .

"This is not a case in which the testatrix was either in feeble health or of weak mind. While her physical strength was reduced in keeping with her years, yet her mentality is not shown to have declined. The record shows that she was a person of strong and vigorous mentality. It does not appear that she was suffering from any weakness that would render her more than ordinarily susceptible to undue influence if it had been sought to be exerted over her.

"The testimony of men of such high standing and unquestioned integrity and ability as Mr. Grazier, Mr. Harbin and Mr. Preece is entitled to great weight. According to all of them Mrs. Peters was competent to make a will and there was nothing to arouse their suspicion. Moreover, Miss Bacon was an entirely disinterested witness who gave a clear account of the occasion of the execution of the will.

"It is clear that she knew the contents of the will. She read it and declined the attorney's offer to explain any portions and said it was exactly what she wanted.

"The attack upon the will cannot be successful here unless the facts are such as to raise a presumption against the proponents. Even if it were held that the presumption has been raised, the proof may be sufficient to overcome it, but we will first deal with whether or not the same has been raised in favor of the contestants. . . .

"The testatrix had no known blood kin and no relatives except collateral or statutory heirs. There was no intimacy between her and her husband's relatives. There was only occasional correspondence between them during the last several years immediately proceeding the execution of the will. It is about as natural, if not more so, that instead of leaving her estate to relatives who were distant to her except for the occasional correspondence with Mr. and Mrs. Arthur Haffard she would prefer to gratefully bestow her bounty upon her physician who was the person who contributed most

to her comfort and happiness except her husband, and at the time of making the will she had lost him as a source of companionship and happiness.

"Mrs. Peters lived for more than eighteen months after executing this will enjoying improved health and in good mental condition. She knew the contents of the will when she executed it and expressed her approval of it, her attorney had a copy of the will within a week, she went through her safety deposit box and listed her property and undoubtedly had her mind fixed upon several occasions on her estate and the disposition she made thereof by the will; even executed a codicil to the will. While I wish to avoid any discussion of the facts surrounding the execution of the codicil as the validity of same is not here in issue, as I can anticipate that it may later be questioned, yet the fact remains that with the abundant opportunity she had to consider the disposition of her estate after November 18, 1937, and that she must not have failed to have done so, then we must consider how easily she could have revoked her will if it were not in accord with her real desire. It seems not only natural but probable that she would have revoked it had it not been her true will."

Undue influence contemplates over persuasion, coercion, or force that destroys or hampers the free agency and will power of a testator. Mere affection or attachment or a desire to gratify the wishes of one highly esteemed, respected or trusted may not of itself amount to undue influence affecting the testamentary capacity of a testator. See Newman v. Smith, 77 Fla. 633, 82 So. 236. To authorize a court to deny or revoke the probate of a will on the ground of undue influence there must be active use of such influence for the purpose of securing the execution of the will to such an extent as to coerce the mind of the testator, so that it cannot be said that the testator was acting voluntarily of his or her own free will and volition. It has not been made to appear from the testimony that the testator was of unsound mind, but on the contrary shows a healthy normal mind and the condition continued until she had a stroke and died shortly thereafter.

We are unable, after a careful and studious consideration of all the evidence, to find in this record sufficient testimony

to establish the charge of fraud in the execution by the testatrix of the challenged will. See Watts v. Newport, *supra*. The County Judge of Pinellas County simply misapprehended the legal effect of all the testimony, which error was corrected on appeal to the circuit court. We fail to find error in the record.

Affirmed.

TERRELL, BUFORD and ADAMS, JJ., concur.