BARTSCH v. LITTLE RIVER BANK & TRUST CO.
No. 58 C 2560.

Circuit Court, Dade County.

October 22, 1958.

———

Robertson, McLeod & Spooner, Coral Gables, for plaintiff.

Evans, Mershon, Sawyer, Johnston & Simmons, Miami, for defendant.

Patton & Kanner, Miami, for Adalbert H. Wirth, intervenor.

JOHN J. KEHOE, Circuit Judge.

This cause originated upon a complaint filed by the plaintiff, Adeline Bartsch, against the defendant, Little River Bank & Trust Co., wherein the plaintiff seeks to have the defendant account to her for certain assets held by the defendant as trustee under a trust agreement dated August 5, 1955 wherein the defendant was named as trustee and one Anton F. Wirth was named as trustor. The complaint further alleges that upon the death of the trustor the trust was to be terminated and the assets distributed to the plaintiff, Adeline Bartsch; and that the trustor, Anton F. Wirth, died a resident of Dade County on January 26, 1958.

After due notice and hearing the court entered an order granting a petition for leave to intervene filed by Adalbert H. Wirth. By his cross-claim filed herein the intervenor seeks to have the trust agreement declared null and void because of the undue influence of the plaintiff, Adeline Bartsch, exercised upon the trustor, Anton F. Wirth, alleging that he had an interest in the assets held by the trustee by virtue of the true will and testament of Anton F. Wirth dated April 6, 1951 and the codicil thereto dated December 11, 1951, wherein he was the chief beneficiary. The plaintiff, Adeline Bartsch, filed an answer to the intervenor's cross-claim wherein she denies that the execution of the trust agreement was the result of the exercise of undue influence.

The court heretofore entered an order directing the defendant Little River Bank & Trust Co. to deposit in the registry of the court all assets of the trust estate in its possession after the deduction of its fees as trustee and releasing and discharging the defendant trustee from further liability with respect to the trust.

The cause came on for final hearing before the court and evidence was presented by the intervenor and the plaintiff. At the conclusion of the trial, the intervenor filed with the court his motion for

leave to amend his cross-claim to conform to the evidence pursuant to rule of civil procedure 1.15 (b), seeking by the proposed amendment to have the court declare invalid because of undue influence not only the trust agreement dated August 5, 1955 but also a last will and testament of the deceased, Anton F. Wirth, dated August 18, 1954 whereby the decedent named the plaintiff, Adeline Bartsch, as his sole beneficiary. Upon the evidence presented and the arguments delivered in this cause, the court makes the following findings of fact and arrives at the following conclusions of law.

### Findings of fact

The deceased, Anton F. Wirth, the trustor in the instrument dated August 5, 1955, died on January 26, 1958, a resident of Dade County, at the age of 92. On April 6, 1951, when he was a resident of Villa Park, DuPage County, Illinois, he executed his last will and testament wherein the intervenor, Adalbert H. Wirth, was named chief beneficiary. This will was introduced in evidence at the trial and appears as an exhibit herein. Also while domiciled in Illinois, on December 11, 1951, Anton F. Wirth executed a codicil to his will increasing the amount of the bequest to his chief beneficiary, Adalbert H. Wirth; and the codicil was also introduced in evidence and appears as an exhibit herein.

On or about August 30, 1952 the plaintiff, Adeline Bartsch, took up her residence in the home of the decedent, a widower then at the advanced age of 86 years, and performed the duties of a housekeeper for him. At this time the plaintiff was approximately 30 years younger than the decedent who although he was not of unsound mind suffered from the usual infirmities of advanced old age and became dependent upon the plaintiff for many of his normal everyday needs. The relationship established between the decedent and the plaintiff was not that of master and servant, but was that of a confidential friend—the decedent reposed great confidence and trust in the plaintiff, in addition to relying upon her for many of his daily physical needs. Although the decedent had known the plaintiff in prior years, the evidence indicates that he had not seen her for some 14 years prior to the renewal of their acquaintance and prior to her becoming his housekeeper.

Within approximately two weeks of the time when the plaintiff established her residence at the decedent's home she secured from him a deed to his home property at Villa Park, Illinois, where he had resided for approximately 30 years, and paid therefor the sum of $900. The evidence establishes that this is the only sum of money she ever paid for the acquisition of this property. This property was

subsequently purchased by the intervenor for the sum of $6,000, which was paid to the plaintiff.

On or about October 22, 1952 the plaintiff and the decedent came to Miami, where the plaintiff owned a home. The removal to Florida was made at a time when Adalbert H. Wirth, the nephew of Anton F. Wirth and principal beneficiary under the will of April 6, 1951 and codicil thereto of December 11, 1951, was absent from Illinois on a trip to Europe. The plaintiff testified that this was intended to be a short sojourn for the purpose of her making certain arrangements with regard to the contemplated sale of her home in Miami.

The decedent was born in Germany and emigrated to the United States. He made arrangements for his nephew, Adalbert F. Wirth, who was an orphan residing in Germany, to come to this country and he furnished money to his nephew for this purpose, which was subsequently repaid by the nephew. From the time of his arrival in this country until his removal to Miami in October of 1952 the decedent always resided in Illinois and most of his relatives and friends lived in that area. Upon his arrival in Miami he was a stranger to this community, he had no relatives or friends in this area—and he could look only to the plaintiff as a person in whom he could place his trust and confidence and from whom he could seek advice. The new acquaintances which the decedent made after he moved to Miami were persons the plaintiff knew and introduced to him.

Within four months from the time when the plaintiff brought the decedent to her home in Miami, work was commenced upon the construction of a new house upon an adjoining lot owned by the plaintiff. This new house was completed at a cost of approximately $15,300. The decedent's money was used to provide for the entire construction cost with the exception of a few hundred dollars.

Within four months from the time when the plaintiff brought the decedent to her home in Miami, she caused to be deposited in her individual savings account all income derived from the decedent's stocks which was not used for certain living expenses, said stocks constituting his sole source of income. From his income certain new purchases of stock were made and after his arrival in Miami all new purchases and exchanges of stock were in the name of the plaintiff. This practice continued during the entire period of their relationship.

Within four months from the time when the plaintiff brought the decedent to her home in Miami, she caused to be placed in her safety deposit box, which was held in her name and to which she alone had access, all of the decedent's stocks.

Within eight months after the time when she brought him to Miami, she purchased an automobile with his funds and put title to the same in her name.

During the years 1953 and 1954 certain of the decedent's stocks were sold and the proceeds thereof placed in a bank account in the plaintiff's name. During this period she obtained for herself substantially all of his wordly goods—stocks valued at approximately $45,000 were placed in her name, he retained in his own name a small amount of stock worth approximately $5,000.

After the decedent moved to Florida he continued to correspond with his nephew, Adalbert H. Wirth. On September 30, 1953 he wrote his nephew asking him to have his attorney prepare a new will. He requested that the new will should revoke all gifts to any persons other than his nephew, and that his nephew should receive all of his estate. This letter stated that Adeline Bartsch had been "paid off", that the decedent owed nothing to his other relatives and wanted his nephew to receive everything. This will was prepared by a Chicago attorney and mailed to the decedent in care of Adeline Bartsch. No explanation appears in the record concerning what became of this will. It was never returned to the Chicago attorney or to the nephew. It is evident, therefore, that it was his intention to make his nephew his chief beneficiary—and that this intention continued at least until September 30, 1953.

On August 18, 1954 the decedent executed a last will and testament revoking all former wills and making Adeline Bartsch his sole beneficiary. On August 5, 1955 the trust agreement, the subject matter of this litigation, was executed. The court finds that the execution of the trust agreement was in truth and in fact only a secondary phase of an over-all scheme whereby the plaintiff set about systematically to deprive Anton F. Wirth of all his worldly goods. At the time of the execution of the trust agreement she had obtained substantially all of the stocks owned by Wirth and these were reconveyed to him and placed in trust. The court finds, however, that her motives were basically selfish. It is significant— (1) that the trust was set up for the purpose of obtaining the double tax exemptions to which the deceased was privileged; and (2) that the stocks were placed in trust only after the execution of the will of August 18, 1954—which would have given all the decedent's property to Adeline Bartsch in any event.

The evidence indicates that Adeline Bartsch made great efforts to obtain evidence concerning certain small gifts which Anton F. Wirth had made to the children of the nephew, Adalbert H. Wirth, upon the occasions of the births of such children. These gifts

consisted of between $2,000 and $3,000 and Adeline Bartsch obtained letters from the nephew acknowledging these gifts, ostensibly to be used as evidence for tax purposes. It is significant, however, that no evidence was obtained and no gift tax significance was placed by Adeline Bartsch concerning—(1) the gift of approximately $15,300 to her which was the result of the actions of Anton F. Wirth in building a house in her name on property owned by her; (2) the gift of the 1953 Mercury automobile; and (3) the gifts during the period of 1953 and 1954 consisting of stocks of a value of approximately $45,000.

## Conclusions

The court finds that from the inception of the relationship between Adeline Bartsch and Anton F. Wirth in October of 1952, there existed a confidential and fiduciary relationship, and that as a matter of law, the burden of proof therefore shifted to Adeline Bartsch to affirmatively show that the gifts received from Anton F. Wirth were free of any undue influence and that they were the result of the exercise of the free will of Anton F. Wirth.

The court finds that the trust agreement dated August 5, 1955, was obtained by the exercise of undue influence upon Anton F. Wirth by Adeline Bartsch. The evidence presented by the intervenor, Adalbert H. Wirth, compels this conclusion. As an example of the many evidences of undue influence, there is to be noted the advanced age of the deceased, the usual physical infirmities and lack of mental vigor resulting from such advanced age, the great opportunity afforded Adeline Bartsch to exercise influence over the decedent as a result of his having moved away from all of his relatives, friends and others in whom he could repose confidence and trust, the unnatural disposition of the decedent's assets to a person who was unrelated to him by blood or marriage, the fact that there was a sudden change in his expressed intention to leave his assets to his nephew, Adalbert H. Wirth, as evidenced by the will of April 6, 1951, the codicil thereof of December 11, 1951, and the request of September 30, 1953, that a will be prepared leaving all of his estate to his nephew, the great speed with which Adeline Bartsch after renewing her acquaintance with the deceased in August of 1952 proceeded to systematically obtain for herself substantially all of the assets of the deceased, and the confidential and fiduciary relationship occupied by Adeline Bartsch, which placed the burden upon her to affirmatively show that there was no exercise of undue influence. The court, therefore, decrees that the trust agreement dated August 5, 1955, was null and void from its inception.

The court concludes that the purported will of Anton F. Wirth dated August 18, 1954, also was obtained by the undue influence of Adeline Bartsch. The court further concludes that the execution of the will dated August 18, 1954, and the subsequent execution of the trust agreement dated August 5, 1955, together with the numerous other acts of Adeline Bartsch in obtaining the property of the deceased, all form integral parts of one scheme designed to obtain all of the assets of the deceased by the exercise of undue influence and the breach of a confidential and fiduciary relationship.

The motion of the intervenor for leave to amend his cross-claim to conform to the evidence pursuant to rule of civil procedure 1.15 (b) is granted. The court grants the intervenor's motion because—(a) it is the opinion of the court that the intervenor's cross-claim and the amendment thereto set forth a cause of action for the revocation of the will dated August 18, 1954; and (b) the issue concerning whether or not said will was obtained by undue influence has been tried before the court within the contemplation of rule of civil procedure 1.15 (b).

Although the court finds that the will dated August 18, 1954, was obtained by the undue influence and breach of a confidential and fiduciary relationship on the part of Adeline Bartsch, the court refrains from entering a decree declaring said will null and void only because of the fact that the court is of the opinion that it lacks jurisdiction to enter such decree. Strickland v. Peters, 120 Fed. 2d 53; Peters v. Florida National Bank of Jacksonville (Fla.), 20 So. 2d 487.

The court finds that the cross-claim as amended to conform to the evidence states a cause of action for the revocation of the will of August 18, 1954, but is now pending in the wrong court of this county and therefore, pursuant to the provisions of rule 1.39 (b), the court transfers this cause, together with the original will dated April 6, 1951, and the codicil thereto dated December 11, 1951, which are exhibits in this cause, to the county judge's court in and for Dade County, for appropriate proceedings therein.

The court hereby orders and directs the plaintiff, Adeline Bartsch, to account for all assets distributed to her by the trustee, Little River Bank & Trust Co., subsequent to the death of Anton F. Wirth on January 26, 1958, and also to account for all income received by her from such assets of the deceased and to deposit such assets and income in the registry of this court. The stock which was in trust is presently registered in the name of the plaintiff and the dividends

are payable to the plaintiff. She is ordered and directed upon the payment of any and all dividends from said securities to deposit same in the registry of the court.

It is ordered and directed that all costs incurred herein be assessed against the plaintiff.

The court retains jurisdiction of this cause and of the assets now deposited in the registry of the court and to be deposited in the registry of the court pursuant to the terms of this final decree for further disposition pursuant to further orders of this court.