239 So.2d 506 (1970)
In re ESTATE OF Coketine Bray CARPENTER, Deceased.
No. 2156.
District Court of Appeal of Florida, Fourth District.
September 25, 1970.
*507 Thomas A. Thomas and Robert M. Sturrup, of Thomas, Sturrup, Della-Donna & Leopold, Hollywood, for appellant Mary Redman Carpenter.
George E. Hovis, Clermont, and Toxey H. Smith, Jr., Wiggins, Miss., for appellees Ben Carpenter, II, and William Bray Carpenter.
OWEN, Judge.
This is a will contest case in which we are called upon to review an order of the county judge's court of Orange County, Florida, adjudicating that the will of Coketine Bray Carpenter, deceased, was procured by undue influence and therefore void and not entitled to probate. The appellant is Mary Redman Carpenter, daughter of the deceased and the sole beneficiary under the will which was denied probate. The appellees, Ben Carpenter, II, and William Bray Carpenter, are two of the decedent's three sons.
While the evidence was voluminous the essential facts can be stated fairly succinctly.
At the time of her death in 1966, Mrs. Carpenter was 52 years of age. Her husband had died in 1953 so that when her four children thereafter became grown and moved away, the decedent was left to live alone in the family home in Winter Garden, Florida. During the several years that she did live alone she handled all of her own business and household affairs. In the summer of 1966, Mrs. Carpenter developed cirrhosis of the liver to such an extent that she became quite ill and required hospitalization by her physician on August 28.
Mary, oldest of the four children, was employed as a school teacher in Daytona Beach. In the summer of 1966 she attended a ten-week school session at the University of Georgia, at the completion of which she visited her mother on August 20, 1966. Mary immediately recognized that her mother was quite ill, and when she again visited her mother one week later and saw that there was no improvement, Mary arranged for her mother to be admitted to a hospital in Daytona Beach on August 28. Mrs. Carpenter had no telephone in her room, nor was one readily accessible to her. On August 30, Mary telephoned her own attorney in Orlando, Russell Troutman, Esquire, advising him that her mother wished to have a will prepared in which Mary was to be named as sole beneficiary and executrix. The following day Mary again telephoned the attorney to impress upon him the urgency of the matter.
Following the second telephone call Mr. Troutman promptly prepared a will in accordance with these instructions and drove from Orlando to Daytona Beach with the document. When he arrived at the hospital, the testatrix recognized him and out *508 of the presence of Mary, Mr. Troutman questioned the testatrix in detail concerning her wishes for disposition of her property, particularly to satisfy himself that she was aware that under the testamentary scheme as relayed to him, Mrs. Carpenter's three sons were being excluded from her will. After this preliminary questioning of the testatrix, Mr. Troutman then arranged for two other persons to be present (one of whom was a medical doctor) during the time that Mr. Troutman read the will to the testatrix and again questioned her to satisfy himself and the witnesses that Mrs. Carpenter was aware of the contents of the document and that it was in accord with her desires. The will was then properly executed and retained by Mr. Troutman, none of the children other than Mary being aware of the will's existence until at or just shortly prior to Mrs. Carpenter's death four days later.
In the order declaring the will void, the probate court found that a confidential relationship existed between Mary and the decedent, that Mary was active in procuring the execution of the will, and that since Mary was the sole beneficiary, there was created a presumption that the execution of the will was procured through undue influence. Finding that Mary had not overcome this presumption nor disproved the existence of undue influence, the order held the will void.
We have some doubt as to whether the facts can be said to establish a confidential relationship between appellant and her mother within the definition of that term as contained in Quinn v. Phipps, 1927, 93 Fla. 805, 113 So. 419, as such relationship does not arise as a matter of law simply because of the mother-daughter relationship between the parties. We also entertain some doubt that Mary's conduct amounted to actively procuring the will or its execution, as her activity was primarily as a messenger on behalf of her mother who was physically unable to perform such activity. See In re Smith, Fla.App. 1968, 212 So.2d 74. It seems quite natural that one who is suffering from a serious and physically incapacitating illness, and who wishes to call a lawyer to have a will prepared, would turn to a member of the family for assistance. Mary was the only member of the family attending her mother and available to relay such message to the lawyer. It would be an ironical law indeed which repaid familial duty or kindness by categorically labeling it as an active procurement of the will.
Nonetheless, having expressed these thoughts we accept for the purpose of this decision the trial court's determination that a confidential relationship did exist between appellant and her mother, and that appellant was active in procuring the will in which she was the sole beneficiary. Acknowledging the established law that these facts give rise to a presumption of undue influence, In re Palmer's Estate, Fla. 1950, 48 So.2d 732; Zinnser v. Gregory, Fla. 1955, 77 So.2d 611, it appears to us that the trial court gave such presumption an erroneous effect, and that the order must be reversed.
Initially, we note that the formal execution and attestation of the will having been established, the burden of proof shifted to the contestants to prove the undue influence alleged by them. F.S. Section 732.31, F.S.A. That burden of proof remained with the contestants at all times.
The undue influence required for invalidation of a will has been many times described by the courts. Mere affection, kindness or attachment of one person for another may not of itself constitute undue influence. Rather, it is conduct which must amount to overpersuasion, duress, force, coercion, or artful or fraudulent contrivances to such a degree that there is destruction of the free agency and will power of the one making the will. In re Peters' Estate, 1945, 155 Fla. 453, 20 So.2d 487; In re Starr's Estate, 1935, 125 Fla. 536, 170 So. 620; Sturm v. Gibson, Fla.App. 1966, 185 So.2d 732; In re Bailey's Estate, Fla *509 App. 1960, 122 So.2d 243; Heasley v. Evans, Fla.App. 1958, 104 So.2d 854.
Of course, direct proof of undue influence of the above-described type is seldom available (there was none in this case) as a consequence of which the contestant, in order to prevail must rely upon either circumstantial evidence or upon the presumption created by law. In searching the record of the evidence in the instant case, we find established without contradiction that the testatrix was a person of strong determination and independent nature, who even though quite seriously ill remained keenly aware of her property and the testamentary disposition she was making of it. While unquestionably there is ample circumstantial evidence from which the trier of fact could find that Mary had exerted influence on her mother through acts of kindness, the record is devoid of evidence tending to show that such influence would qualify as undue under the test we have set forth above, so as to have the effect of invalidating any bequest to Mary. Thus, absent both direct and circumstantial evidence as to undue influence, the contestants must rest their case squarely upon the presumption created by law.
We turn then to a consideration of the proper function of a presumption. It is a rule of law which attaches to certain evidentiary facts and is productive of certain procedural consequences. Gulle v. Boggs, Fla. 1965, 174 So.2d 26; Nationwide Mutual Insurance Co. v. Griffin, Fla.App. 1969, 222 So.2d 754; Locke v. Stuart, Fla. App. 1959, 113 So.2d 402; 9 Wigmore, Evidence, § 2491. As applied in the instant case, the effect of the presumption was such that upon proof that a substantial beneficiary of a will occupied a confidential relationship to the testatrix and was active in procuring the execution of the will, it is presumed that the ultimate fact in issue is true, i.e., that the will was the result of undue influence exerted upon the testatrix by the person occupying the confidential relationship. The procedural consequence of the presumption is simply that in the absence of credible evidence contradicting the presumed fact, the court determines as a matter of law that the presumed fact is true.
It should be emphasized, however, that a presumption is not itself evidence and has no probative value. 9 Wigmore, Evidence, § 2491. When a party against whom the presumption operates submits credible evidence which contradicts either the evidentiary facts giving rise to the presumption, or the fact presumed, the presumption vanishes and the issue is determined on the evidence just as though no presumption had ever existed. Gulle v. Boggs, supra. Assuming, as we have done for our decision in this case, that the evidentiary facts giving rise to the presumption were not sufficiently contradicted, the record is abundantly clear that the presumed fact, i.e., undue influence on the testatrix, was flatly contradicted by credible evidence. A reference to the testimony of the attorney who drafted the will and witnessed its execution illustrates credible testimony that the testamentary disposition was in accord with the testatrix' wishes acting freely and voluntarily. We do not suggest or hold that the attorney's testimony was necessarily binding upon the trier of fact. We do say that because it was reasonably credible and contradicted the presumed fact, it had the legal effect of dissipating the presumption. With the presumption thus dissipated and the matter deposited with the trier of fact the evidence was insufficient to show that Mary's conduct toward her mother amounted to overpersuasion, duress, force, coercion, or artful or fraudulent contrivances to such a degree that there was a destruction of the free agency and will power of the testatrix.
The presumption of undue influence which the law has developed has a proper function in preserving for the lawful heirs and beneficiaries the estates of those who become helpless prey to predators. Nonetheless, *510 the law should be applied with caution lest in our zeal we extend it so as to defeat the wishes of one who with full testamentary capacity has executed a will which is not clearly shown to be contrary to his or her real intent.
Reversed.
WALDEN, J., concurs.
REED, J., dissents, with opinion.
REED, Judge (dissenting):
The majority predicates its decision on a conclusion that there was before the county judge "reasonably credible" evidence to contradict the presumption of undue influence. In reaching this conclusion the majority has, in my opinion, substituted its judgment for that of the trial judge with respect to the credibility of witnesses and the weight to be accorded their testimony. This is not a proper function of the appellate court. We said In re Estate of Balch, Fla.App. 1968, 215 So.2d 343 (cert.den., Fla. 1969, 225 So.2d 525), in reviewing an order of a county judge which revoked the probate of a will found to have been the product of undue influence:
"The order of the lower court comes to this court with a presumption of correctness. The credibility of the witnesses and the weight of the evidence is solely a matter for the lower court to determine * * *." (Emphasis added.)
The majority relies on the testimony of Mr. Troutman as sufficient to rebut the presumption of undue influence. Certainly the majority is correct in its assessment of Mr. Troutman as a credible witness. What I believe the majority overlooks, however, is that the weight to be assigned to Mr. Troutman's testimony was still a matter for determination by the trial judge. From the record, the county judge was entitled to have discounted the weight of Mr. Troutman's testimony as evidence rebutting the presumption of undue influence because of the testatrix's extremely weakened mental and physical condition at the time Mr. Troutman interviewed her at the hospital and also because a significant part of that interview was conducted in Mary's presence before Mr. Troutman had an opportunity to question the testatrix in private.
In my opinion the record showed that the county judge recognized and properly applied the controlling principles of law; therefore, I would affirm the order on appeal.