HALL, Judge.
Appellants raise three points on appeal:
*1290 I.WHETHER THE ELECTION OF edna McClenahen to claim A WIDOW’S SHARE OF THE ESTATE of ross a. McClena-hen, DECEASED, WAS A VALID ELECTION BECAUSE OF THE ALLEGED SECOND MARRIAGE — A COMMON-LAW MARRIAGE.
II.WHETHER LOUISE MALLAND USED UNDUE INFLUENCE OVER THE DECEDENT, ROSS A. McClenahen, in order to OBTAIN THE ASSETS OF HIS ESTATE.
III.WHETHER THE TRIAL COURT ERRED IN FINDING AN ESTOP-PEL ON THE PART OF THE CA-VEATOR, edna McClenahen, TO CLAIM AN ELECTIVE SHARE.
On December 22, 1982, Ross A. McClena-hen passed away. His will, leaving the majority of his estate to appellee Louise Malland, was admitted to probate. Appellants, Edna P. McClenahen, the deceased’s wife, and their two daughters, Ann Olesky and Edna Smith, filed a petition to deny probate on the basis of undue influence. Thereafter, Edna P. McClenahen, as the widow of Ross A. McClenahen, filed an election to take an elective share of his estate.
The trial court found that appellant Edna P. McClenahen failed to prove that she was the surviving spouse of Ross A. McClena-hen and was not entitled to an elective share of his estate, that the will was not the product of undue influence, and that she was estopped to claim an elective share.
We find no merit as to appellants’ point II, but we reverse and remand on points I and III.
Ross and Edna McClenahen were married on June 18, 1921. Two children were born of the marriage, Edna in 1927 and Ann in 1929. The marriage deteriorated steadily until 1949 when Ross separated from Edna. Sometime between then and 1960, the decedent moved to New York and lived in cohabitation with Janet Edlich.
In December of 1958, the decedent and Janet Edlich purchased property in Collier County, Florida, taking title as Ross and Janet McClenahen, as husband and wife, as an estate by the entireties.[1] Upon the decedent’s retirement in 1961, he and Janet moved to the Collier County property, where they held themselves out to be husband and wife. The couple also maintained joint bank accounts and filed joint tax returns as husband and wife. Evidence presented at trial showed neither evidence of a divorce between Ross and Edna McClenahen nor evidence of a formal marriage ceremony between Ross and Janet. Janet Edlich was herself married at the time of her relationship with decedent, and she was aware of his marital status as well.
Contact between decedent and his first family was extremely rare. Appellant Ann Olesky testified that she and her father communicated through approximately ten letters and ten telephone calls between 1961 and 1979. Decedent and his wife, appellant Edna McClenahen, had absolutely no contact since their separation in 1949.
When Janet Edlich suffered from and died of cancer in 1979, decedent made the acquaintance of Janet’s nurse, Louise Mal-land, the appellee in the instant action. Appellee began to care for decedent as part of her services with the Collier County Homemaker’s Service. Thereafter, the two formed a close relationship. Appellee called decedent every night and visited three to four times a week to run errands or just provide company. On some occasions appellee would sleep at decedent’s house, though in a different room.
In apparent appreciation and consideration of appellee’s services, decedent contacted an attorney who redrafted the will so as to leave his house and sixty percent of his residuary estate to appellee, with the *1291 two remaining twenty percent shares of his residuary estate to go to appellants Edna Smith and Ann Olesky. Prior to the execution of this will, decedent typed up an agreement which purported to be an inter vivos transfer of his interest in his home to Louise. The agreement provided that as consideration for the transfer decedent expected appellee to care for him and keep him out of institutions. The will was executed on November 3, 1982, along with a corresponding trust agreement which in the event of decedent’s incapacity would pour over all of his assets into a trust which contained provisions identical to those in the will. At no time did appellee contact the attorney of the decedent nor was she present during the execution of the will.
Decedent executed the instrument in issue declaring himself to be under no coercion whatsoever. Several witnesses testified that he remained mentally sharp and very intelligent until his death on December 22, 1982.
Appellants contended that appellee used her relationship with the deceased to unduly influence him to execute a will making her the primary beneficiary. Edna McClen-ahen contended that she was the only legal wife of the deceased and was entitled to an elective share of his estate.
Appellants contend in their second point on appeal that the trial court erred in admitting the will to probate and finding no undue influence. We find no merit as to this point and uphold the trial court’s finding that no undue influence was used by appellee over the decedent.
Appellants proffered irrelevant and unreliable testimony suggesting that appellee had in the past befriended other elderly, ailing patients with the motive of active procurement of their assets. Further, appellants failed to prove the unsound mental condition of the testator.
In re Estate of Carpenter, 253 So.2d 697 (Fla.1971), imposes an encompassing six-point standard for determining active procurement of a will. Appellants argue that Carpenter does not require individual proof of each factor but rather a determination by the trier of fact as to the totality of circumstances. Appellants additionally submit that the evidence which gives rise to presumption of undue influence can support a permissible inference of undue influence.
Yet the trial court, applying the Carpenter threshold, found (1) appellee was not present at the execution of the will, (2) appellee was not with the testator on those occasions when he expressed a desire to make a will, (3) appellee did not recommend the attorney who drew the will, (4) appel-lee’s knowledge of the contents of the will prior to its execution was only hinted at by ambiguous or inconclusive evidence, (5) ap-pellee did not instruct the attorney preparing the will, and finally, (6) appellee did not safeguard the will subsequent to execution.
To validly assert the legal doctrine of undue influence, the movant must focus more upon the weak mental orientation of the testator than the motives of the beneficiary. A substantial part of appellants’ attempted case here involves the latter. While there is an abundance of compelling testimony as to the more important issue of testator’s own mental acuity, there is no persuasive evidence as to any incompetency or weak mental orientation. “Undue influence contemplates overpersuasion, coercion, or force that destroys or hampers the free agency and will power of a testator.” In re Peters’ Estate, 155 Fla. 453, 20 So.2d 487, 492 (1945). The trial court having operated clearly within sensible and discretionary bounds, there are no grounds to reverse its denial of undue influence.
In regard to appellants’ first point concerning the elective share and the validity of the second marriage, a common-law marriage,[2] the trial court held that appellant Edna McCIenahen had failed to prove *1292 that her husband’s subsequent relationship with Janet Edlich was invalid. It erred in ignoring the fact that decedent lacked the requisite element of capacity which, along with consent, cohabitation, and public recognition, are the elements required by this court in Sikes v. Guest, 170 So.2d 322 (Fla. 2d DCA 1964), for a valid common-law marriage. Where one or both of the parties is married, the union is meretricious from its inception and not a valid common-law marriage, even though all the other elements are present.
In the absence of clear and convincing evidence, the evidential burden attendant to a valid common-law marriage remained unfulfilled. In re Estate of Alcala, 188 So.2d 903 (Fla. 2d DCA 1966). Following Alcala, the decedent’s relationship with Janet Edlich could pre-empt the valid ceremonial marriage between decedent and his first wife only if it was shown, as it was not, that there was a transition from meretricious to matrimonial. Therefore, Edna McClenahen did make a valid election as the decedent’s surviving spouse.
As to appellants’ third point, the facts do not warrant the application of es-toppel principally because such a defense, as asserted in Florida eases of this nature, is properly available to a party who has detrimentally relied upon the actions of the person sought to be estopped. Davis v. Evans, 132 So.2d 476 (Fla. 1st DCA 1961). Evidence presented by appellee fails to establish this casual requirement of estoppel. Appellee did not detrimentally rely upon any action of Edna McClenahen. Further, it is unproven that Edna McClenahen did anything to actively repudiate her marital status.
As the surviving spouse, decedent’s wife, Edna McClenahen, is entitled to an elective share of his estate. Appellee, decedent’s hired homemaker, cannot avail herself of the defense of estoppel.
We, therefore, reverse and remand on points I and III, with directions consistent with this opinion.
OTT, A.C.J., and DANAHY, J., concur.

. The parties do not raise and, therefore, we do not consider whether title to this property would become a tenancy in common upon this court's finding that there was no valid common-law marriage and only one-half interest in the property would pass to the estate.

. Common-law marriage was recognized in Florida prior to January 1, 1968. § 741.211, Fla. Stat. (1967).