547 So.2d 946 (1989)
Kay L. COPPOCK, As Personal Representative of the Estate of George Hawkins, Deceased, Appellant,
v.
Hazel H. CARLSON, Appellee.
No. 88-990.
District Court of Appeal of Florida, Third District.
April 11, 1989.
Rehearing Denied September 14, 1989.
Walton, Lantaff, Schroeder & Carson and G. Bart Billbrough, Miami, for appellant.
Robert V. Shea, John K. McDonald, Miller & Gale and Richard M. Gale and Edgar Miller, Miami, for appellee.
Before SCHWARTZ, C.J., and BASKIN and FERGUSON, JJ.
FERGUSON, Judge.
George Hawkins died in 1987 at age 84. His last will and testament, dated January 10, 1985, was admitted to probate naming the appellant, Kay L. Coppock, personal representative and beneficiary of his entire residuary estate.
Appellee, Hazel H. Carlson, 92-year-old sister of the decedent, filed a "Petition For Revocation Of Probate." After a nonjury trial, the will was declared void based on findings that Mr. Hawkins had been subjected to undue influence and that he lacked testamentary capacity when the will was executed. Coppock appeals.
We reverse because there is no showing in the record, by substantial and competent evidence, that the will was a product of undue influence or that the decedent lacked testamentary capacity.
Undue influence in the execution of a will contemplates coercion, force, or over-persuasion, which acts to destroy a *947 testator's free will or prevents him from exercising his own judgment. See Peters v. Florida Nat'l Bank, 155 Fla. 453, 20 So.2d 487 (Fla. 1945); 1 Bowe-Parker: Page on Wills § 15.2 (1960). The standard of proof required is the greater weight of the evidence. See Cripe v. Atlantic First Nat. Bank, 422 So.2d 820 (Fla. 1982).
Although Kay Coppock and Hawkins had become friends during the final three to four years of his life, there is no evidence she either enjoyed a confidential/fiduciary relationship with the decedent, or engaged in active procurement of his will. See In re Estate of Carpenter, 253 So.2d 697 (Fla. 1971); Carter v. Carter, 526 So.2d 141 (Fla. 3d DCA), rev. denied, 536 So.2d 243 (1988). Coppock played no role in the decedent's management of his financial affairs. She was not present at the execution of the will. She did not recommend an attorney to draw the will or secure witnesses. Neither did she hold the document for safekeeping after execution. No proof was submitted that Coppock had any knowledge of the will's contents prior to execution, or that she gave any instructions on the will's preparation to the draftsman. Although these are not exclusive criteria to suggest active procurement, see In re Estate of Carpenter, 253 So.2d at 702, it is significant that no such evidence was presented by the petitioner for revocation.
Whether a testator had the requisite testamentary capacity is determined solely by his mental state at the time he executed the instrument. See In re Wilmott's Estate, 66 So.2d 465 (Fla. 1953); T. Atkinson, Wills § 51 (2d ed. 1953). Notwithstanding testimony that Mr. Hawkins was afflicted with the normal physical debilities attendant to advanced age, and delusions about his physical prowess, there was undisputed evidence, more relevant to the question of capacity, that on January 10, 1985, he went alone to keep an appointment with his attorney, appeared of strong mind, and properly executed a new will. There is no showing that he lacked the ability to understand the nature and extent of his property, the natural objects of his bounty, or the general process of will-making. See In re Wilmott's Estate, 66 So.2d at 468; In re Estate of Edwards, 433 So.2d 1349 (Fla. 5th DCA 1983); McGovern, Kurtz and Rein, Wills, Trusts and Estates § 7.2 (1988). At another time, when asked why his sister was not named as beneficiary of his estate, Mr. Hawkins explained that he expected to outlive her and that she was financially better off than he.
George Hawkins chose to leave his money and other assets to a close friend. In the absence of substantial evidence of undue influence or lack of testamentary capacity, that choice must be respected. See Tarsagian v. Watt, 402 So.2d 471 (Fla. 3d DCA 1981) (unless the evidence clearly shows that he has been precluded from exercising free will, a testator's wishes are to be upheld).
Reversed.
SCHWARTZ, C.J., and FERGUSON, J., concur.
BASKIN, Judge (dissenting).
The majority opinion rests on the rule of law that "in the absence of substantial evidence of undue influence or lack of testamentary capacity" an individual's choice for distributing assets must be respected. See Tarsagian v. Watt, 402 So.2d 471 (Fla. 3d DCA 1981). In the case before us, however, the trial court found that the testator lacked testamentary capacity:
14. At the time of the execution of the January, 1985, will which is the subject matter of the instant Will contest, it appears that the Decedent was suffering from a progressive type of senile dementia, he was having episodes of confusion and disorientation including confusion and disorientation evidenced by the "kind of ideas" that he expressed which according to the psychiatric testimony presented at trial appeared of a delusional nature. These delusions include the Decedent's indication that he considered that he was a member of a SWAT team, that he was involved in raids, that he was a drug enforcement agent, that he had received an award from President Reagan *948 for his work as an enforcement agent and that he was involved in a gun fight with a Cuban and that he had been out at night with a border patrol.
15. According to the psychiatric testimony adduced at trial and in depositions, the Decedent's progressive senile dementia was evidenced by gradual changes in his personality as well as indications of memory impairment, both of past and recent events. He suffered episodes of confusion and disorientation. There were underlying physical changes associated with this mental condition including a heart condition, arteriosclerosis and hypertension all of which indicate underlying physical factors affecting his sense of reality and the ability of the Decedent to function adequately. With these conditions there is, according to the psychiatric testimony, a susceptibility to the influence of other people (which appears to have occurred in the instant case) and there was an impairment of reality in the Decedent's mind to the point where he developed delusions. There was disorientation, indications of impaired judgment, and an inability to cope with reality as well as an overall gradual deterioration of his faculties.
16. The psychiatric expert testimony presented at the trial was conflicting. As the trier of fact, it was necessary to consider the conflicts between experts and resolve the same.
The trial court's judgment should be upheld if it is supported by substantial, competent evidence. See In re Estate of Carpenter, 253 So.2d 697 (Fla. 1971); Gegen v. Leary, 503 So.2d 367 (Fla. 3d DCA 1987). The record contains more than sufficient testimony supporting the trial court's determination. For that reason, I would affirm.