104 So.2d 854 (1958)
George S. HEASLEY, Eleanor Kirkland, Henry H. Kirkland, Donald D. Weyer, and Marian Sawtelle, Appellants,
v.
Doris M. EVANS and Union Trust Company of St. Petersburg, Florida, As Curator and As Administrator cum Testamento annexo de bonis non of the Estate of Daisy Clarke, Deceased, Appellees.
No. 365.
District Court of Appeal of Florida. Second District.
September 3, 1958.
Rehearing Denied September 22, 1958.
*855 L.D. Martin, St. Petersburg, for appellants.
Skelton & Willis, St. Petersburg, for appellees.
KANNER, Chief Judge.
Daisy Clarke, who died on February 13, 1955, at the age of eighty-four, bequeathed the bulk of her estate to the appellee, Doris M. Smith, now Doris M. Evans. This appellee petitioned for probate of the will; objections were interposed by the appellants as collateral relatives and heirs, seeking to abrogate the instrument as invalid because of testamentary incapacity and mistake on the part of Daisy Clarke and because of the exercise of undue influence by the appellee, Doris M. Evans. These objections were overruled by the court and the will was admitted to probate. Appellants now seek a ruling in their favor through appeal to this court.
Daisy Clarke in 1948 went to call upon Doris M. Smith, a non-relative, through a letter of introduction received by her from a mutual friend. Doris invited her to dinner that evening; a friendship developed, and this appellee saw to it that Daisy received attention with reference to matters of personal grooming and care. Eventually Daisy, having developed a strong attachment for the younger woman, took up abode in the home of Doris. On December 30, 1949, Daisy and Doris entered into a contract whereby, under terms initiated and proposed by Daisy, the deceased agreed to pay currently and through provision in her will the greater part of her estate, with a few testamentary exceptions, in return for which Doris would relinquish her hundred-dollar-a-week position with a jewelry concern in order to devote her time to Daisy and would care for Daisy for the rest of her life.
About two and one-half years after the making of the contract, a rift arose between Daisy and Doris, partly due to Daisy's jealousy or fear that the younger woman would marry and that her attentions to Daisy would be curtailed. The contract was set aside on January 12, 1953, through court action instituted by deceased, and a settlement between the parties was effected. A new will was then made by Daisy omitting Doris as a beneficiary. Later a renewal of their friendship was sought and brought to pass by Daisy; the companionship was resumed, but no contract was involved. Doris married and eventually moved to Buffalo, New York, where Daisy spent a Christmas visit and the two exchanged letters.
During the space of time when deceased was associated with Doris, five different wills were executed by Daisy, one in 1949 pursuant to the contract, one in 1952 omitting Doris as a beneficiary, then three successive wills, one in April of 1953, one in March of 1954, and the last on May 13, 1954. The degree of Doris' favor as beneficiary *856 increased in each of the last three wills. Common to all these wills, except the one made during the time of the estrangement between the two, is the fact that Doris was consistently the major beneficiary. The May 13, 1954, will leaves an estate of around $64,000 to Doris and her son and a total of $2,800 to the collateral heirs.
Testimony and evidence may here be distilled to present basically the factual situations upon which each side relies.
The five collateral heirs, appellants, are first, second, and third cousins of deceased. Through their testimony they purport to show that Daisy Clarke was physically frail, lame, poor of eyesight, senile, forgetful, flighty, penurious, and possessed of but little knowledge of the extent and nature of her possessions; that her mother in 1926 created a trust for her because she was not capable; that Doris managed all Daisy's affairs, attended to her mail, signed papers, and paid her bills; that Doris received a total of $23,700 from Daisy prior to her death and other gifts of considerable value; that she drove Daisy to Washington, D.C., by automobile from St. Petersburg, thence to the office of a trust officer, friend of Daisy, who arranged the making of the will by an attorney in that city; and that the will was executed by deceased under the mistaken belief that the contract with Doris was still operative.
Appellees counter that it was Daisy who sought the acquaintanceship and then the friendship of Doris, proposed the contract between them and devised its terms, sought renewal of the friendship following abrogation of the contract, devised and executed three wills after breach of contract, all consistently in favor of Doris as major beneficiary; that after the contract was dissolved Doris had no further actions nor conversations concerning a will; that Daisy was responsible for the trip to Washington and that Doris was not present at the time of the discussion concerning the will and its making; that Daisy possessed knowledge of the extent and nature of her possessions, of the identity of her relatives and her relationship with them, and of the dissolution of the contract; that Daisy was characterized by her St. Petersburg attorney as "keenly alert" when he interviewed her at her request the day before signing of the April 16, 1954, will, prepared by him and basically the same as the May 13, 1954, will; and that at such interview she expressed regret over the rift with Doris and referred to her as the best friend she ever had.
The important factor involved in the ability to make and execute a will is that the mind of the testator be sound enough for him to recognize and comprehend what disposition he is making of his property at the time of the executing of the instrument; that is, that he be able to understand generally the nature and extent of his possessions to be devised or bequeathed, his relations to the persons who were or should or might have been objects of his bounty, as well as a general understanding of the practical effect of the will as executed. Mere old age, physical frailty or sickness, failing memory, or vacillating judgment are not inconsistent with testamentary capacity if the testator possessed the testamentary prerequisites, particularly where the will appears to have been made under fair circumstances and was not unnatural in the disposition of the property. In re Wilmott's Estate, Fla. 1953, 66 So.2d 465.
Eccentricities of habit, peculiarities in appearance or behavior, or penuriousness do not of themselves establish lack of testamentary capacity; but on the question of testamentary capacity, it is generally permitted to show in connection with other evidence of incapacity such behavior and characteristics. See 57 Am. Jur., Wills, section 103, p. 105; and Redfearn, Wills and Admin. of Estates, 3d Ed., vol. 1, section 40, pp. 68-70.
Section 731.08, Florida Statutes, F.S.A., provides that a will may be declared void *857 by reason of its execution through fraud, duress, mistake, menace, or undue influence.
Undue influence, as it is required for invalidation of a will, must amount to over-persuasion, duress, force, coercion, or artful or fraudulent contrivances to such a degree that there is destruction of the free agency and will power of the one making the will. Mere affection, kindness, or attachment of one person for another may not of itself constitute undue influence. In re Starr's Estate, 1935, 125 Fla. 536, 170 So. 620, and In re Peters' Estate, 1945, 155 Fla. 453, 20 So.2d 487.
From a review of the record and the testimony, it appears that the crux of the case has its nucleus in the anomolous attachment developed by Daisy Clarke, elderly spinster, for the younger, more worldly woman. The circumstances as they relate to the solitary existence of Daisy Clarke reveal that the history of her life was marred by an unloved and neglected childhood, by declining years devoid of warmth of close family connections or loved ones of any sort. It appears that the attraction she felt toward Doris, her direct antithesis in personality and age, and from whom she received unaccustomed friendliness and warmth, could not then be characterized as an unnatural reaction.
Daisy Clarke's parsimonious living habits were of her own choosing. Despite her disregard for the material things of life as they concerned her own comfort, convenience, and appearance, she gave generously in what appears to have been a pathetic attempt to gain human warmth and affection. She got less in return than what she bestowed. Doris was unhesitatingly willing to be the object of Daisy's bounty, and Daisy on her part was a willing benefactor.
It was Daisy who initiated every single move toward companionship and friendship between the two  the inception of the friendship, the composing and execution of the contract between them. The renewing of the friendship after the contract had been abrogated, and the making of the respective wills in which Doris was the major beneficiary. When Daisy executed the will omitting Doris as a beneficiary, she gave her reasons for so doing; also as to the will made shortly thereafter re-naming Doris as a major beneficiary, Daisy gave her reasons for reversal of her former position.
From the facts of the case as they have appeared, suspicion and conjecture could easily be aroused. However, suspicion and conjecture cannot constitute a basis upon which a will may be declared invalid. Illogical as may seem Daisy's infatuation for Doris and as unbalanced as these two indisputably were as to personalities, ways of life, and age brackets, it nevertheless appears to this court that Daisy knew what she wanted and what she was doing.
An appellate court will not disturb the findings of fact and conclusions of law of a probate court in a will contest unless there is a lack of substantial competent evidence to support the findings or unless it is clearly manifested that the trial judge misapprehended the legal effect of the evidence in its entirety. In re Zimmerman's Estate, Fla. 1956, 84 So.2d 560.
This court is in accord with the views expressed by the able trial judge that Daisy Clarke was possessed of testamentary capacity at the time of the will's execution; that considering the relationship of the parties and the infatuation of Daisy for Doris, the charge of undue influence has not been sustained; and that Daisy did not labor under mistake in the executing of the contested instrument.
Accordingly, the order admitting the will to probate is hereby affirmed.
ALLEN and SHANNON, JJ., concur.