PEARSON, Judge.
Edna P. Howland and Nitefall Nursing Home of Miami, Inc., appeal from a final judgment which ordered them to pay the plaintiff-appellee sums totalling $19,730.64 which Mrs. Edith Deering transferred to Mrs. Howland as a result of the exertion of undue influence.
The appellee had sought the return of inter vivos transfers totalling more than $40,000. He alleged the transfers were void because Mrs. Howland had exercised undue influence over Mrs. Deering to obtain them. The court found that a confidential relationship had existed between appellant Edna P. Howland and Mrs. Deering
“because of the fact that Edith Deering lived at the nursing home operated by Edna P. Howland, and apparently had a friendly relationship with her. Edith Deering relied on and placed trust in Edna P. Howland; on the whole the dealings seemed to be one of trust.”
This finding led to the conclusion:
“That by virtue of said confidential relationship, the presumption is created that the transfers from Edith Deering to Edna P. Howland are affected by undue influence, and the burden of proof shifts to Edna P. Howland to prove by clear, competent evidence that these were gifts.”
The court decided that Mrs. Howland did not carry the burden of proof with regard to certain transfers (thus rendering them invalid) but did carry it with regard to others (thus rendering them valid). The defendant-appellants have assigned errors to the findings of invalidity, and the appel- *474 lee has cross-assigned error to the findings of validity. It is our conclusion that the findings of the trial judge are supported by the record and that neither party has demonstrated reversible error. Therefore we affirm.
The appellants’ first point on appeal is:
“WHERE A JOINT OWNERSHIP WITH RIGHT OF SURVIVORSHIP IS CREATED IN A SAVINGS ACCOUNT AND A CERTIFICATE OF DEPOSIT, AND WITHDRAWALS ARE MADE AND THE CERTIFICATE OF DEPOSIT IS PAID DURING TFIE CO-OWNERS LIFETIME, MAY THE EXECUTOR OF THAT CO-OWNERS ESTATE RECOVER FOR SUCH WITHDRAWALS AND PAYMENTS WHERE THERE HAS BEEN NO RENUNCIATION OF THE JOINT OWNERSHIP [ ?]”
In support of their position appellants urge that the case law of Florida is that the creation of such a savings account raises a presumption that a valid gift has been made. See Maier v. Bean, Fla.App. 1966, 189 So.2d 380. They thereupon argue that because there was no proper basis for the trial court to find a confidential relationship between Mrs. Deering and Mrs. Howland, the court improperly ruled that the burden of going forward with the evidence shifted to Mrs. Howland to establish the voluntary conduct of the donor. As we stated previously we find that the record supports the finding of a confidential relationship.
It is well established in Florida that when a confidential relationship exists and the superior person benefits from that relationship, transfers to or for the benefit of the superior person are presumed to result from the exertion of undue influence. See Wilkins v. Wilkins, 141 Fla. 188, 192 So. 791 (1940); Bartsch v. Wirth, Fla. App.1959, 115 So.2d 18; Wrobbel v. Walda, Fla.App.1968, 217 So.2d 340 [Fourth District Court of Appeal, filed December 30, 1968],
The appellants’ second point is that the trial court erred when it refused to permit Mrs. Howland to testify as to the conditions concerning the transfers. The trial court ruled that § 90.05, Fla.Stat., F. S.A., commonly known as the Dead Man’s Statute, prohibited such testimony. The substance of the appellants’ argument is that § 90.05 should not apply to cases in which the representative of an estate is the plaintiff, because to apply § 90.05 in such cases would be to prevent a person charged with exerting undue influence from conducting any defense. Helms v. First Nat. Bank of Tampa, 158 Fla. 168, 28 So.2d 262 (1947), is relied on as authority for this argument. But in that case the Supreme Court of Florida declared that § 90.05 “applies to cases where the rights of the deceased at the time of his death are involved.” 28 So.2d at 263. The present case involves whatever rights (involving the transferred sums) were vested in Mrs. Deering at the time of her death. Therefore, we think the trial court properly applied § 90.05 in the present case.
Section 90.05, the Dead Man’s Statute, is a rule of evidence. Its effect is to seal the lips of one party to a transaction when death has sealed the lips of the other.
“The purpose of the statute is to prevent the surviving party or parties from having the benefit of his or their own testimony, where, by reason of the death of the adversary his representative is deprived of the decedent’s version of the transaction or statement. Accordingly, by that statute the testimony of the claimant is stilled when his adversary’s ‘mouth is stopt with dust.’ ” Traurig v. Spear, Fla.App.1958, 102 So.2d 165, 168.
The legislative purpose of the Dead Man’s Statute must guide judicial decisions in actions instituted by donees to establish the validity of a transfer as well as actions instituted by the representatives of deceased donors to establish the invalidity of a transfer.
*475 The appellee raises the following ques-. tion in his cross-appeal:
“WHERE A CONFIDENTIAL RELATIONSHIP IS FOUND TO EXIST BETWEEN A DONOR AND A DO-NEE, WHO IS THE BENEFICIARY OF GIFTS, MUST THE DONEE AFFIRMATIVELY PROVE BY CLEAR, POSITIVE AND SATISFACTORY PROOF THAT THE TRANSACTION WAS ENTERED INTO FREELY," OPENLY, VOLUNTARILY AND WITH UNDERSTANDING OF THE FACTS ?”
While it is apparent that this question must be answered in the affirmative, it does not follow that the type of evidence therein referred to does not appear in this case. An examination of the record reveals four instances in which the court found clear and convincing evidence that the transfers were not tainted by undue influence :
“D. Apparently around Christmas time, from the testimony of one of the nurses who got a $3,000.00 gift, Edith Deering was in the holiday mood and was giving gifts. The transfer of $10,-000.00 between December 31st, 1965 and January 5th, 1966 was a good and valid gift, resulting from no undue influence and should not be disturbed. The transfer of $378.00 on December 24th, 1965, and $1,245.00 on January 14th, 1966, were valid transfers and should not be disturbed. Also, the transfer of $7,410.-83 on January 28th, 1966 was a valid gift from Edith Deering as it was shown that Edith Deering was interested in seeing the nursing home improved, and that she endorsed the check over to tfte mortgagee, and therefore, this gift should not be disturbed.”
The evidence indicates that the $378.00 transfer might have been made for Mrs. Deering’s personal benefit. And, as the trial court pointed out, the motive for the $7,410.83 transfer was Edith Deering’s interest in improving the nursing home in which she spent much of her life. The evidence gives us no reason to change the court’s conclusion as to the validity of these transfers. Edith Deering made the $10,000 transfer during a holiday period when she was making many gifts. This transfer may be properly regarded as a personal gift and also as a gift intended to help Mr. and Mrs. Howland in their nursing home venture, from which venture Mrs. Deering derived benefits.
The fourth transfer which the trial court found valid was actually a series of gifts amounting to $1,245.00. The evidence sustains the conclusion that Mrs. Deering gave this series of gifts to Mrs. Howland so that she might distribute them to help other patients in the nursing home. We hold that no error has been demonstrated in the findings of fact or conclusions of the trial court.
Affirmed.