379 So.2d 693 (1980)
Louise WILLIAMSON, Appellant,
v.
Jean KIRBY, Guardian of Person and Property of Mae W. Yearwood, a Physical and Mental Incompetent, Appellee.
No. 79-296.
District Court of Appeal of Florida, Second District.
February 6, 1980.
*694 Robert E. Pyle, Lake Alfred, for appellant.
No appearance for appellee.
GRIMES, Chief Judge.
This is an appeal from a judgment cancelling a deed executed by Mae Yearwood which conveyed a remainder interest in her home in Ft. Meade to Louise Williamson. The nature of the case and most of the pertinent evidence can be gleaned from a reading of the trial court's findings.
On October 14, 1976, Mae Yearwood, a 90 year old widow, conveyed her home in Fort Meade, to the Defendant, Louise Williamson, reserving a life estate to herself. In October, 1977, Mrs. Yearwood was declared incompetent due to senility and Plaintiff, Jean Kirby, was appointed her guardian. In this capacity, Mrs. Kirby brought this action, alleging that a confidential relationship existed between the parties to the deed; that the deed was without consideration; that Mrs. Yearwood was incapable of understanding the matter, extent and effect of the deed; that the Defendant was guilty of fraud and had exercised undue influence upon the grantor.
Mae Yearwood and Louise Williamson were close friends and neighbors for many years. The older lady could not drive and due to age and infirmity frequently needed assistance with her every day tasks. Mrs. Williamson was very helpful, caring for her when ill and aiding her in many ways, not the least of which was furnishing companionship and friendship.
In the Fall of 1976, Mrs. Yearwood was mentally competent, capable of understanding transactions and the effect of her acts. However, she had become forgetful and was easily confused. She relied upon Mrs. Williamson for aid and advice. She had no regular attorney.

*695 She became angry at and mistrustful of members of her own family, none of whom lived in Florida, when one of them transferred her savings account to an out of State bank. When later she learned that a local real estate broker had shown her home to a potential buyer, she became frightened for her security and decided to convey her home to Mrs. Williamson.
There was no evidence of her receiving outside, independent advice from an attorney or other adviser other than Mrs. Williamson, prior to making her decision.
Although the testimony of Mrs. Williamson was to the contrary, the Court finds that Mrs. Williamson was the one who suggested attorney Edward Flood as he had recently represented her; that she made an appointment for them to see Mr. Flood; that she was present and participated in the conversation with him and that she assisted in concluding the transaction. Mr. Flood visited with Mrs. Yearwood sufficiently to satisfy himself as to her competence but was not consulted as to the advisability of the conveyance or as to alternative ways to prevent sale of her home. Mrs. Williamson then carried Mrs. Yearwood to the Courthouse to record the deed. There was no evidence of efforts by Mrs. Williamson to keep the transaction secret from Mrs. Yearwood's family but neither did she tell them of the gift.
The conveyance was an outright gift with no future obligations by Mrs. Williamson for continued care or obligation to Mrs. Yearwood.
The Court further finds: That a confidential relationship existed between Mrs. Yearwood and Mrs. Williamson; that Mrs. Williamson fostered and encouraged the idea of conveying the property to her; and that she did exert an undue influence upon Mrs. Yearwood.
The same conclusion is reached regardless of whether a presumption of undue influence from the confidential relationship is invoked. Without the presumption the greater weight of the evidence established undue influence in the execution of the deed.
The court's reference to the presumption of undue influence arising from a confidential relationship finds its basis in the legal principles set forth in the case of In re Estate of Carpenter, 253 So.2d 697 (Fla. 1971). Carpenter involved the execution of a will but later cases have applied the same principles to inter vivos gifts. Majorana v. Constantine, 318 So.2d 185 (Fla.2d DCA 1975); Pate v. Mellen, 275 So.2d 562 (Fla.1st DCA 1973) (on rehearing). According to Carpenter, where a person contests a will upon grounds of undue influence, he has the burden throughout the proceedings of proving undue influence. However, because of the difficulty of meeting that burden, the law raises a presumption of undue influence if (a) the contestant is able to establish a confidential relationship between the testator and the beneficiary and (b) the evidence shows that the beneficiary was active in the procurement of the will. If the contestant is successful in raising the presumption, the beneficiary then has the burden of explaining his active involvement in the preparation of the will. He does not have the burden of disproving undue influence. If the explanation is reasonable, the presumption vanishes and it becomes the court's responsibility to determine whether the contestant has established undue influence by the greater weight of the evidence. Such evidence may include not only the evidence initially presented to raise the presumption but any additional evidence which the parties have introduced.
Applying these principles to the facts of this case, we believe that even though the evidence was conflicting, there was substantial competent evidence to support the court's conclusion that a confidential relationship existed and that Mrs. Williamson was active in the procurement of the conveyance. Thus, the guardian did establish a presumption of undue influence. At this point, however, we find it necessary to depart from the court's conclusions. Mrs. Williamson's reasons for being involved *696 in the activities surrounding the conveyance were certainly reasonable. Mrs. Yearwood was unable to get around by herself, and Mrs. Williamson lived next door and took care of most of her physical requirements. Further, Mrs. Williamson said she took Mrs. Yearwood to the lawyer for him to prepare the deed because Mrs. Yearwood asked her to. While this evidence may not have disproved undue influence in and of itself, it certainly provided the credible explanation required by Carpenter to dispel the presumption of undue influence.
We are then left with the question of whether the evidence as a whole was sufficient to support a finding of undue influence. As reluctant as we are to interfere with a trial judge's finding of fact, we simply cannot find enough evidence in this record which together with all reasonable inferences to be drawn therefrom would support the conclusion that Mrs. Yearwood's conveyance of her home was the product of undue influence exerted by Mrs. Williamson.
There is no indication that Mrs. Williamson ever took advantage of Mrs. Yearwood. In fact, the evidence suggests the contrary. Mrs. Yearwood and Mrs. Williamson had been friends and neighbors for many years. At one point Mrs. Yearwood gave Mrs. Williamson a power of attorney to take care of her affairs if she become ill, but Mrs. Williamson never sought to exercise any authority under the power. When Mrs. Yearwood suffered a stroke two months after the execution of the deed, Mrs. Williamson actually took her into her home. The only shadow of suspicion upon Mrs. Williamson which we can detect is in the court's finding that despite her statement to the contrary, it was Mrs. Williamson who selected attorney Flood to prepare the deed. We find this discrepancy to have little importance particularly when we consider Mr. Flood's testimony in depth. Flood first explained that he had known Mrs. Yearwood for about fifty years since she had taught him in the seventh grade. Then, as to whether Mrs. Yearwood was executing the deed of her own volition, Flood said:
Q. Mr. Flood, what did you do to determine whether Mrs. Yearwood had the presence of mind to know what she was doing?
A. Well, in the conversation which lasted probably an hour or two it was perfectly clear she knew what she was doing. She was as sharp as a tack.
Q. Now you have known her 50 years. Had she changed any substantially during the last few years?
A. No.
Q. Because of getting old?
A. No, no.
.....
Q. Was there any hesitancy in your mind whether she knew the nature of what she was doing in executing the deed?
A. None whatsoever. She wanted to be sure that house was hers as long as she lived and then Mrs. Williamson's. She didn't want to go to a nursing home.
Q. You had known her enough years presumably you would have known if she in any way did not know what she was doing?
A. Yes, sir, I wouldn't have done it if she had not been knowing what she was doing.
With respect to Mrs. Yearwood's mentality, a psychiatrist who examined her six months after the execution of the deed in connection with a guardianship proceeding concluded that she was competent to manage her affairs even at that time. We also find it significant that Mrs. Yearwood reserved a life estate in the property. She did not deed away her home in fee simple thereby placing herself in a position of reliance upon the charity of others. For this ninety year old woman, the effect of the conveyance was the equivalent of leaving Mrs. Williamson the home in her will. There was nothing particularly unusual in this since Mrs. Yearwood's husband had been dead for many years, she had no children, *697 and none of her relatives lived in Florida.
While our courts must be vigilant to protect the aging against any form of overreaching, simply because an elderly person chooses to give her property to a friend instead of her relatives does not warrant cancelling the deed where as here there is no real proof of undue influence. Apropos to our conclusion, we refer to our opinion in Heasley v. Evans, 104 So.2d 854 (Fla.2d DCA 1958). That case involved a will rather than a deed, but the following quotation illustrates our understanding of undue influence.
Undue influence, as it is required for invalidation of a will, must amount to over-persuasion, duress, force, coercion, or artful or fraudulent contrivances to such a degree that there is destruction of the free agency and will power of the one making the will. Mere affection, kindness, or attachment of one person for another may not of itself constitute undue influence.
104 So.2d at 857.
We reverse the judgment, and remand the case with directions to enter a judgment in favor of Mrs. Williamson.
SCHEB and OTT, JJ., concur.