389 So.2d 224 (1980)
ATLANTIC FIRST NATIONAL BANK OF DAYTONA BEACH, Appellant,
v.
Joe H. CRIPE, et Ux., Appellee.
No. 79-514.
District Court of Appeal of Florida, Fifth District.
September 17, 1980.
Rehearing Denied October 24, 1980.
*225 B. Paul Katz, Daytona Beach, for appellant.
Garrett L. Briggs, Daytona Beach, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
Appellant Atlantic First National Bank of Daytona Beach, the plaintiff below, as personal representative of the estate of Carrie B. Hare, which was the plaintiff below, appeals a final judgment entered by the Circuit Court for Volusia County.
Carrie B. Hare, who died in April, 1976, had been befriended by appellees, Joe and Sereata Cripe. The bank sought to recover certain assets in the approximate amount of $55,000.00 which appellees had obtained from Mrs. Hare.
The first question raised by this appeal is whether the facts established a presumption of undue influence, and if so, whether it was rebutted by appellees. We conclude that the presumption was established and appellees failed to rebut it.
*226 Mrs. Hare, at the time of her death, was approximately 90 years of age. In 1966, at a deposition she gave she was unable to recall her age, birthdate, or how long she had lived in Daytona Beach, as well as other significant facts. Shortly thereafter, appellees claimed they entered into an agreement with Mrs. Hare to handle her business affairs and to provide her with housekeeping services. In exchange, they were to receive a rent-free apartment in Mrs. Hare's apartment complex and entitlement to any funds remaining in the joint bank accounts at her death. Upon her death there existed a joint checking account in the names of Joe Cripe and Carrie B. Hare at the Florida Bank and Trust Company in the amount of $12,700.00; a certificate of deposit in the amount of $32,000.00 and an account at the Atlantic First National Bank in the amount of $10,900.00. At Mrs. Hare's death, Mr. Cripe placed these sums in a certificate of deposit in his and his wife's names. The bank brought this action to void these transactions on the ground of undue influence.
Appellees contend that they are entitled to the funds in the joint accounts and certificate by authority of section 659.291(1), Florida Statutes (1979) which provides:
[W]ith the opening or maintenance of an account, including a certificate of deposit, in the names of two or more persons . . payable to or on the order of one or more of them or the surviving account holder .. ., all such persons and each person depositing funds in any such account shall be presumed to have intended that upon the death of any such person all rights, title, interest and claim in, to, and in respect of, said deposits and account ... shall vest in the surviving account holder or holders.
Subsection (2) of this section, however, provides that the presumption in favor of the survivor is not absolute:
The presumption herein created may be overcome only by proof of fraud or undue influence or clear and convincing proof of a contrary intent.
Therefore, the issue here is whether the accounts and certificate were created or maintained as a result of undue influence by the appellees.
Undue influence is that which amounts to over-persuasion, duress, force, coercion or artful or fraudulent contrivances to such a degree that there is a destruction of the free agency and will power of the one making the will or gift. See Heasley v. Evans, 104 So.2d 854 (Fla.2d DCA 1958). Mere affection, kindness or attachment of one person for another may not of itself constitute undue influence. Id. at 857.
While as a general proposition, the burden of proof rests with the party claiming undue influence, Freedman v. Freedman, 345 So.2d 834 (Fla.3d DCA 1977), the law is a jealous guardian of confidence and trust and will not permit the use of confidential or fiduciary relations to achieve acquisition of personal gain. Wilkins v. Wilkins, 141 Fla. 188, 192 So. 791 (1939). Therefore, where a confidential or fiduciary relationship exists and there is active procurement of gain by the one in whom confidence is reposed, the law presumes that the gift was obtained by undue influence. In Re Estate of Carpenter, 253 So.2d 697 (Fla. 1971); Williamson v. Kirby, 379 So.2d 693 (Fla.2d DCA 1980). See also Howland v. Strahan, 219 So.2d 472 (Fla.3d DCA 1969).[1] The presumption is, however, rebuttable.
Courts have some flexibility in determining the existence of a confidential or fiduciary relationship and in ascertaining whether the facts show active procurement. Carpenter at 701. A confidential relationship may embrace both technical fiduciary relationships and those informal relationships which exist whenever one person trusts in and relies upon another. It exists in every case where confidence is reposed on one side and there is resulting superiority *227 and influence on the other; the relationship and duties need not be legal, but may be moral, social, domestic, or merely personal. Earls v. Johnson, 172 So.2d 602 (Fla.2d DCA 1965). See also Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (1927).
In the case before us, Mr. Cripe's testimony evinces a close, personal relationship between himself, his wife, and Mrs. Hare. They visited her apartments annually between 1949 and her death in 1976. They handled her business affairs and after 1966, wrote all checks, made all deposits and handled the execution of documents in a condemnation suit. One can hardly construct a position of greater trust and these facts indicate the presence of active procurement.[2] Therefore, it is clear that a presumption of undue influence arose.
The next question is whether appellees met their burden of coming forward with a reasonable explanation for their active role in Mrs. Hare's affairs. Carpenter, at 704; Williamson at 695; Bryant v. Bryant, 379 So.2d 382 (Fla.1st DCA 1980); Majorana v. Constantine, 318 So.2d 185 (Fla.2d DCA 1975); Pate v. Mellen, 275 So.2d 562 (Fla.1st DCA 1973).
Appellees explain their involvement was based on their friendship with Mrs. Hare between 1949 and 1966. They also point out that they did indeed care for her business and personal needs between 1966 and her death. A finding of inadequacy of consideration coupled with mental weakness on the part of the donor may result in a finding of a failure to meet the burden of a reasonable explanation. See Bryant at 383.
Appellees testified that they not only were to receive a rent-free apartment, but also all profits generated from the apartment rentals as well as joint ownership of the checking accounts and the certificate. For this, they looked after her business and personal affairs although they were only in Daytona Beach eight months of the year. The testimony of a neighbor who had taken care of Mrs. Hare and brought her meals prior to 1966 reemphasized the confused and unstable person reflected in the deposition of Mrs. Hare in 1966.
Therefore, we conclude that the explanation offered by appellees did not reasonably explain their involvement in view of the confused mental state of Mrs. Hare and the disparity between the amount appellees received and the services they rendered. There is no evidence except the signature cards and the self-serving testimony of appellees to prove the existence of any such agreement.
REVERSED.
SHARP, J., and JAMIESON, FRANCES A., Associate Judge, concur.
NOTES
[1] While Carpenter involved a will situation and the instant case involves an attempt to set aside inter vivos gifts, the same principles apply. Williamson at 695; Majorana v. Constantine, 318 So.2d 185 (Fla.2d DCA 1975).
[2] Other evidence as well indicates active procurement, such as Mr. Cripe's testimony that he asked Mrs. Hare if he could keep the profit from a condemnation award and she said yes. This money (approximately $31,000.00) was used to buy the certificate of deposit.