422 So.2d 820 (1982)
Joe H. CRIPE and Sereata L. Cripe, Petitioners,
v.
ATLANTIC FIRST NATIONAL BANK OF DAYTONA BEACH, Etc., Respondent.
No. 59952.
Supreme Court of Florida.
September 9, 1982.
Rehearing Denied November 2, 1982.
*821 Isham W. Adams and Garrett L. Briggs of Adams & Briggs, Daytona Beach, for petitioners.
Harold C. Hubka of Black, Crotty, Sims & Hubka, Daytona Beach, for respondent.
BOYD, Justice.
This cause is before the Court on petition for review of a decision of a district court of appeal, Atlantic First National Bank v. Cripe, 389 So.2d 224 (Fla. 5th DCA 1980). Part of the decision of the district court of appeal had the effect of improperly disregarding the trial court's findings of fact, and therefore it conflicts with decisions of this Court holding that an appellate court may not re-weigh evidence and substitute its judgment for that of the trier of fact. Marshall v. Johnson, 392 So.2d 249 (Fla. 1980); Delgado v. Strong, 360 So.2d 73 (Fla. 1978); Shaw v. Shaw, 334 So.2d 13 (Fla. 1976); Westerman v. Shell's City, Inc., 265 So.2d 43 (Fla. 1972). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Atlantic First National Bank of Daytona Beach, as personal representative of the estate of Carrie B. Hare, brought this action to recover funds that had been held in joint bank accounts in the names of Carrie B. Hare and Joe Cripe. Mr. Cripe obtained the funds as survivor pursuant to section 659.291, Florida Statutes (1979),[1] after Mrs. *822 Hare's death. When Mrs. Hare died in 1976 at the age of ninety, there was a checking account containing $12,700, a separate account containing $10,900, and a certificate of deposit in the amount of $32,000, all joint accounts in the names of Carrie B. Hare and Joe Cripe. The bank brought this action to recover the funds on the ground that Mr. Cripe had obtained them by undue influence. The case was tried by the court.
The evidence showed that Carrie Hare owned several apartment buildings in Daytona Beach, with a total of forty-nine units. Among her tenants were Joe and Sereata Cripe who, beginning in 1949, spent seven and a half months each year in Daytona Beach. They spent the remainder of each year at their home in Michigan.
In 1966, Mrs. Hare asked Joe Cripe to help her manage her apartment rental business. The evidence indicated that Mrs. Hare and the Cripes made an arrangement whereby they would handle the financial management of her properties and see to her personal care. The rental income was to be placed in joint accounts so that Joe Cripe could sign checks both for business expenses and for the expenses of Mrs. Hare's personal support and care. In return for these services, the Cripes were to occupy their apartment and use utilities free of charge (they kept it year-round now rather than having to move out each year when they returned to Michigan) and, upon Mrs. Hare's death, Joe Cripe would be entitled to the remaining balances in the accounts derived from the business property income. At the time of her death in 1976, these account balances totalled over $23,000.
In 1969, part of Mrs. Hare's property was condemned by the state for the widening of an adjacent highway. The state paid compensation in the approximate amount of $31,000. On the suggestion of Joe Cripe, Mrs. Hare agreed to deposit the condemnation proceeds in the joint names of herself and Mr. Cripe.
The trial court, after hearing the evidence, held for the defendants (the Cripes). The court, however, made no findings of fact or conclusions of law when it rendered judgment. On appeal, the district court reversed, concluding that the evidence had established facts giving rise to a presumption of undue influence, that the burden was thus shifted to the defendants to rebut the presumption and justify Mrs. Hare's gift to them, and that they had failed to rebut the presumption.
The district court found an unexplained disparity between the value of the services the Cripes provided to Mrs. Hare and the value of what they received from her. The court noted that from 1967 onward, the Cripes had a year-round rent-free apartment, and utilities free of charge, even though they were still only present to provide management and personal services for seven and a half months per year. The relationship of personal trust and dependence that arose, the court reasoned, called for the application of fiduciary principles. *823 Under such principles, the court said, there is a presumption of undue influence when the stronger party gains a financial benefit from the weaker, and burden is on the stronger party to rebut the presumption.
In the case of In re Estate of Carpenter, 253 So.2d 697 (Fla. 1971), cited by the district court, it was held that when a person who is a primary beneficiary of a will had a confidential relationship with the testator and there was active procurement of the bequest, a presumption of undue influence arises. While the burden of showing undue influence remains with the contesting party, the presumption, if unrebutted, is sufficient to sustain the burden. The burden of going forward with evidence is shifted by the presumption. Once the defendant comes forward with evidence in response to the presumption, the presumption ceases to exist, but the evidence giving rise to the presumption may still be considered even though contrary evidence has been presented. The trier of fact determines the question of undue influence, the standard of proof required of the moving party being the preponderance (greater weight) of the evidence. Id. at 701-04. The rule of Carpenter is properly applied to inter vivos transfers. Williamson v. Kirby, 379 So.2d 693 (Fla. 2d DCA 1980); Bryant v. Bryant, 379 So.2d 382 (Fla. 1st DCA 1979); Majorana v. Constantine, 318 So.2d 185 (Fla. 2d DCA 1975); Pate v. Mellen, 275 So.2d 562 (Fla. 1st DCA 1973).
We believe that the agreement between Mrs. Hare and the Cripes, pertaining to the management of her properties and the supervision of her personal care, in exchange for the remaining balances in the accounts maintained for meeting her business and personal expenses, must be considered separately from the transaction by which Mr. Cripe obtained permission to deposit the condemnation proceeds into a joint account. On appeal, the district court should have applied the Carpenter test to the two transactions separately.
The evidence showed that the Cripes began to manage Mrs. Hare's apartment business and to supervise her personal care in 1966. There was no evidence to establish that at the time this arrangement began by agreement of the parties, there was a confidential relationship between them. While the weakness or dependence of one party to an agreement is relevant to the question of undue influence once a confidential relationship exists, it does not in itself establish a confidential relationship. See Wilkins v. Wilkins, 141 Fla. 188, 192 So. 791 (1939). Therefore, with regard to the agreement for management services and personal care in exchange for an apartment and the remaining balances on the death of Mrs. Hare, the district court erred in holding that a presumption of undue influence was raised. Even if a confidential relationship had been shown, so that a presumption of undue influence was created, we believe the defendants' showing with regard to their agreement with Mrs. Hare rebutted the presumption. Therefore there was sufficient evidence for the trial court to conclude that the plaintiff bank was entitled to no relief with regard to the account balances that derived from the arrangement. The district court incorrectly substituted its judgment for that of the trial court.
With regard to the $32,000 certificate of deposit derived from the condemnation award, however, the considerations are different. By the time Mrs. Hare obtained the condemnation settlement award in 1969, a close and dependent relationship had developed between herself and Joe Cripe. There was evidence to show that after he had been managing her affairs for some time, she became dependent upon him for financial services and advice and that she placed her trust in him. A confidential relationship had developed. From that point forward, Joe Cripe was prohibited from using his position of trust and confidence for "acquisition of personal gain or to acquire property without full, fair and adequate consideration." Wilkins, 192 So. at 792. The condemnation proceeds were deposited in a joint account because Mr. Cripe asked Mrs. Hare to do so. Since there was a confidential relationship and active procurement of a financial benefit, a presumption *824 of undue influence arose. This presumption placed upon the defendants the burden of providing a reasonable explanation of the gift.
In an attempt to carry this burden, Mr. Cripe explained that Mrs. Hare agreed to deposit the money in a joint account because he had handled the condemnation transaction and knew more about it than she did. There was no evidence, however, that Mr. Cripe provided anything more than routine administrative services in connection with the compensation award, services which he was already obligated to perform as Mrs. Hare's property manager. In return for some relatively insignificant paperwork, the Cripes received a sum of money out of all proportion to the services provided.
Petitioners argue that there was insufficient proof of active procurement with regard to the deposit of the condemnation proceeds into a joint account. There was evidence, however, that Mrs. Hare's mental condition had deteriorated and she had become totally dependent on the Cripes. Where there is such inequality of mental strength, active procurement can be shown by evidence, as there was here, of a request or suggestion by the dominant party.
Therefore with regard to the condemnation funds, the district court was correct in finding undue influence from the evidence, and such finding did not constitute substituting its judgment for that of the trier of fact. The trial court's denial of relief to the plaintiff with regard to the condemnation funds was not supported by the evidence. The evidence showed a confidential relationship existed in 1969, and Mr. Cripe obtained survivorship rights to a large sum of money by affirmative request or suggestion. These facts raised a presumption of undue influence, which the Cripes had to rebut in order to prevent a finding of undue influence based on the presumption. They did not carry this burden. Since the facts therefore showed undue influence, the trial court should have awarded the $32,000 certificate of deposit to the plaintiff pursuant to section 659.291(2), Florida Statutes (1979).
The decision of the district court of appeal reversing the trial court with regard to the two joint accounts, referred to in the district court's opinion as containing $12,700 and $10,900 respectively, was in error and should be quashed. That portion of the district court's decision that reversed the trial court with regard to the $32,000 certificate of deposit, derived from a condemnation settlement, was correct and should be approved.
Accordingly, the decision of the district court is quashed in part and approved in part.
It is so ordered.
ALDERMAN, C.J., and OVERTON, SUNDBERG and McDONALD, JJ., concur.
ADKINS, J., concurs in part and dissents in part with an opinion.
ADKINS, Justice, concurring in part and dissenting in part.
I would quash the decision of the District Court of Appeal and remand with instructions to affirm the judgment of the trial court.
NOTES
[1] The statute provides:

(1) Unless otherwise expressly provided in the signature contract card or other similar instrument delivered to and accepted by a bank in connection with the opening or maintenance of an account, including a certificate of deposit, in the names of two or more persons, whether minor or adult, payable to or on the order of one or more of them or the surviving account holder or holders, all such persons and each person depositing funds in any such account shall be presumed to have intended that upon the death of any such person all rights, title, interest and claim in, to, and in respect of, said deposits and account and the additions thereto, and the obligation of the bank created thereby, less all proper setoffs and charges in favor of the bank, shall vest in the surviving account holder or holders.
(2) The presumption herein created may be overcome only by proof of fraud or undue influence or clear and convincing proof of a contrary intent. In the absence of such proof, all rights, title, interest and claims in, to, and in respect of, said deposits and account and the additions thereto, and the obligation of the bank created thereby, less all proper setoffs and charges in favor of the bank against any one or more of such persons, shall, upon the death of any such persons, vest in the surviving account holder or holders, notwithstanding the absence of proof of any donative intent or delivery, possession, dominion, control, or acceptance on the part of any person, and notwithstanding the provisions hereof may constitute or cause a vesting or disposition of property or rights or interests therein, testamentary in nature, which, except for the provisions of this section, would or might otherwise be void or voidable.
(3) Nothing herein contained shall abridge, impair, or affect the validity, effectiveness, or operation of any of the provisions of ss. 659.29 and 674.405 or the rights of banks to make payments as therein provided.