470 So.2d 37 (1985)
Lee Oliver THOMAS As the Attorney in Fact, FOR Matilda Lampkin FENNELL, a/K/a Matilda Fennell and Matilda E. Fennell, Appellant,
v.
Georgia E. LAMPKIN, Appellee.
No. 84-429.
District Court of Appeal of Florida, Fifth District.
May 16, 1985.
Rehearings Denied June 6, 1985.
*38 Joseph Morrell, Orlando, for appellant.
A. Clifton Black, Orlando, for appellee.
SHARP, Judge.
Lee Oliver Thomas, as the attorney in fact for Matilda Fennell, appeals from a final judgment in favor of appellee Georgia Lampkin in his suit to set aside two deeds on the grounds of undue influence and to obtain an accounting of monies expended by Lampkin during the period she was Fennell's attorney in fact. The trial court, sitting without a jury, denied any relief because it ruled Thomas had not proved, by a preponderance of the evidence, undue influence. We reverse.
This case arose out of a family dispute over the properties and assets of Fennell, an elderly resident of Winter Park, who at the time of the trial, was clearly incompetent. Fennell had two sisters, Georgia Lampkin, the defendant below, and Bertha Thomas, who died in 1983. Fennell raised Lee Thomas, the plaintiff below, from the time he was two years old, together with another first cousin, Ben, who was deceased. According to the testimony at trial, Fennell's relationships with her sister Bertha, and her relatives were amiable for many years. Her relationship with the defendant was also good, although the defendant visited her only once or twice a year from her home in Hallandale, Florida.
In approximately 1979 or 1980, Fennell, a widow who lived alone, began to mentally deteriorate to the point that she could no longer care for herself. During this time period, the defendant came from Hallandale to visit Fennell on a frequent basis. However, the testimony is in bitter conflict concerning whether the plaintiff and his family, or the defendant, assumed Fennell's care, and further, whether the plaintiff, defendant, or both, took advantage of Fennell's senility and commenced taking away her cash and personal property.
On February 21, 1980, the defendant procured a power of attorney from Fennell, ostensibly in order to pay Fennell's bills and take care of her. The defendant clearly was the more dominant and better educated sister. During that time, she tried to keep her sister Bertha and the Thomas relatives away from Fennell. She also contacted a local attorney to prepare and to supervise the execution of two deeds by Fennell, which transferred all of her real properties to the defendant. The defendant was present when both deeds were executed. One deed was for a vacant lot and the other was for Fennell's home, which apparently meant more to Fennell than anything else.
*39 While the defendant had Fennell's power of attorney, Fennell's bank account went from $2,700.00 to a few dollars. At the trial, under examination by the plaintiff's attorney, she was unable to account for the depletion of that account, and for expenditures of Fennell's social security checks and the income derived from the rental of Fennell's home. Further, she failed to provide explanations as to why she issued checks to her son, and paid her own personal insurance bills with Fennell's funds.
The defendant testified she had the doors and windows in Fennell's house repaired, the roof replaced, and had it tented by an exterminator. However, these expenses do not nearly account for the total of funds she spent out of Fennell's bank account, plus her social security income, and the rental income from Fennell's home. The defendant did not refute the facts that, at time of trial, Fennell's house had deteriorated and was in need of repairs and that she had removed all of Fennell's personal property from the house.
The record indicates that shortly after deeding her home to the defendant in December 1980, Fennell suffered severe burns when she fell asleep in front of a heater. She was alone in the house at the time. Fennell was then hospitalized and later moved to a nursing home despite her continual requests to go home.
The plaintiff testified that when he told Fennell in the hospital that she no longer owned her own home, she was surprised and could not recall conveying it to the defendant. Fennell then revoked the defendant's power of attorney and executed one in favor of the plaintiff. He brought the instant suit for the rescission of the deeds and for an accounting against the defendant.
It is a well-established proposition in Florida that a deed may be set aside because of undue influence exercised on the grantor by the grantee.[1]Regero v. Daugherty, 69 So.2d 178 (Fla. 1953); See generally 19 Fla.Jur.2d Deeds §§ 93, 95 (1980). Although the party claiming undue influence usually has the burden of proving it, Williamson v. Kirby, 379 So.2d 693 (Fla. 2d DCA 1980), a rebuttable presumption of undue influence arises where, (1) the moving party establishes that a confidential relationship existed between the grantor and grantee and (2) the grantee was active in the procurement of the deed. Williamson.
We think this case is a classic situation in which the presumption of undue influence in the procurement of the deeds arose. In Re Estate of Carpenter, 253 So.2d 697 (Fla. 1971); Allen v. Estate of Dutton, 394 So.2d 132 (Fla. 5th DCA 1980), cert. denied, 402 So.2d 609 (Fla. 1981). A confidential relationship existed between Fennell and the defendant,[2] and Fennell was clearly slipping mentally at the time of the conveyances. One deed, in fact, was signed by Fennell's "X" because she was feeling so "shaky" that day. The defendant was also clearly the moving force behind procuring and executing the conveyances, as she obtained an attorney to draft *40 the deeds and subsequently brought him to Fennell's house in order to execute them.
At that point, the burden of coming forward with a reasonable explanation for the transfers fell upon the defendant. Carpenter. We do not think she carried her burden in this case. The defendant testified her motive for procuring the conveyances was to repair Fennell's house and make it a "memorial" to her sister. Yet, she made but a few of the many much needed repairs, and paid for them with Fennell's own monies. In its present ragtag state, it is hardly a "memorial." Further, the house was rented almost as soon as it was conveyed to the defendant, thereby preventing Fennell from returning to it from the hospital and enjoying the fruits of the repairs.
Another witness also testified that Fennell distrusted the plaintiff's family, and she wanted the defendant to be her sole heir. Because Fennell did not believe in wills, she elected to deed the property to the defendant. This explanation might substantiate an inter vivos transfer which reserved a life estate in Fennell, but not an outright deed that left her a homeless pauper. Further, it is clear Fennell later thought she still owned her home. The reason that she revoked the defendant's power of attorney, and executed a power of attorney in favor of plaintiff, was to enable the plaintiff to get the property back for her.
Accordingly, we reverse the final judgment and direct that a judgment be entered rescinding the two deeds to Lampkin; and requiring her to account for the expenditures of Fennell's monies in her bank account during the time she held Fennell's power of attorney, as well as any rents received from the property and any of Fennell's personal properties she removed from her home.
REVERSED AND REMANDED.
DAUKSCH and COWART, JJ., concur.
NOTES
[1] Undue influence has been defined by this court in Atlantic First National Bank v. Cripe, 389 So.2d 224, 226 (Fla. 5th DCA 1980), quashed, 422 So.2d 820 (Fla. 1982):

Undue influence is that which amounts to over-persuasion, duress, force, coercion or artful or fraudulent contrivances to such a degree that there is a destruction of the free agency and will power of the one making the will or gift. See Heasley v. Evans, 104 So.2d 854 (Fla. 2d DCA 1958). Mere affection, kindness or attachment of one person for another may not of itself constitute undue influence. (Citations omitted).
[2] The term "confidential relationship" is extremely broad and encompasses virtually all relationships of trust and dependence, In Re Estate of Carpenter, 253 So.2d 697 (Fla. 1971); Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (1927). Thus, the defendant's status as a fiduciary at the time of the conveyance is sufficient to establish a confidential relationship. Further, courts have been especially quick to find a confidential relationship where the grantor and grantee lived together, the grantor and grantee are related by blood and the grantor has become dependent on the grantee. See, e.g., Jordan v. Noll, 423 So.2d 368 (Fla. 1st DCA 1982), rev. denied, 430 So.2d 451 (Fla. 1983); Bryant v. Bryant, 379 So.2d 382 (Fla. 1st DCA 1979).