552 So.2d 964 (1989)
Robert LANGFORD, Appellant,
v.
Curtis McCORMICK, As Personal Representative of the Estate of Anava L. McCormick, Deceased, Appellee.
No. BR-176.
District Court of Appeal of Florida, First District.
November 9, 1989.
Rehearing Denied December 12, 1989.
*965 Benjamin W. Redding of Barron, Redding, Hughes, Fite, Bassett & Fensom, P.A., Panama City, for appellant.
Richard D. Ogburn of Foster & Ogburn, Panama City, for appellee.
PER CURIAM.
Robert Langford appeals a final judgment denying his petition for revocation of probate of his sister's will dated in March 1985 on the ground that her will subsequently executed in September 1985 is void due to procurement through undue influence. We hold the evidence is legally insufficient to support a finding of undue influence.

I.
Anava McCormick died in October 1985. Her surviving family included her husband, Curtis McCormick (appellee), her three brothers, Robert Langford (appellant), Fred Langford and Murray Langford, and her niece Elizabeth, the wife of Murray's son. In early 1985, Anava was diagnosed as having terminal cancer and advised to get her affairs in order. She went to her brother, Fred, an attorney and member of the Florida Bar, and asked him to prepare her will. The will Fred drew (the March will) named her husband Curtis as her personal representative and left most of her estate to him, primarily through the residuary clause. Several months later, Anava requested Fred to draw another will for her. As Fred was not sure exactly what she wanted in the new will, he drew three separate wills for her consideration, which he gave to Robert Langford. These wills ultimately were delivered to decedent's niece Elizabeth.
On August 30, 1985, an approaching hurricane forced Anava and Curtis to leave their Panama City Beach home and go to the family home in Alabama. The next day Anava went to a hospital in Birmingham for treatment. She rode in a car with Elizabeth and Elizabeth's mother, while Curtis rode to Birmingham in another car with Elizabeth's father-in-law, Murray. During the trip to Birmingham, Elizabeth showed her aunt the three wills drafted by Fred and asked her which one she wanted to sign. According to Elizabeth, Anava chose one of the three and handed it to Elizabeth's mother, but did not sign it or otherwise make any indication of her choice on the will. Elizabeth did not notice which one Anava chose. She retrieved the wills and placed all three in a single envelope and returned them to the glove compartment of the auto. Sometime after the hospital trip, Elizabeth showed the three wills to her father-in-law. Murray then showed the wills to his wife, who reviewed them and selected the one she believed Anava had chosen. Murray mailed that will to *966 Robert Langford.[1]
In September, some three weeks before Anava died, Robert made an appointment for her with Mark Murphy, an attorney in Andalusia, Alabama, who had represented her in past real estate transactions. The record indicates that this was done at Anava's request. Anava told her husband, Curtis, of this appointment and her intention to change her will, and Curtis objected. Nevertheless, he drove her to the attorney's office as she requested. On the day of the appointment, unbeknown to Anava, Robert took the will he had received from Murray to attorney Murphy's office. He gave it to Murphy and left through the back entrance, explaining to Murphy that Anava and Curtis were sitting in the waiting room and he wanted to avoid a confrontation with Curtis, who did not approve of Anava's making a new will.
Attorney Murphy took Anava to an empty office, leaving Curtis in the waiting room. He showed her the will he received from Robert and asked her if she wanted to execute it. After reviewing this will with the attorney, she told him that she did not want to sign that will and instructed him to prepare a new will. He spoke to her at some length about the disposition of her property. After she told him what she wanted done and why, he took his notes to a secretary and the drafting of the new will began. Among other things, Anava instructed Murphy to make Robert rather than Murphy executor, and she also told him that she wanted the will to recite certain powers for the executor which had not been set forth in the draft left by Robert. Unlike all previous wills, this will explicitly left real property purchased during the marriage to Curtis rather than passing it through the residuary clause. Because the drafting process was consuming a longer time than expected, Murphy left Anava in the office and reentered the waiting room to advise Curtis of the reason for the delay. Curtis confirmed that he disapproved of what Anava was doing and would contest the will if she executed it. After the will was typed, Anava signed it in the presence of two employees in Murphy's office, but out of her husband's presence, and left the new will and all copies with Attorney Murphy. Thereafter, Anava and Curtis returned to their home in Panama City Beach where she remained until her death.
On October 17, Mrs. McCormick succumbed to her illness. The following day, before Anava's funeral was held, Curtis filed a petition to probate the March will. Robert Langford, named as personal representative in the September will, filed a petition to revoke probate of the earlier will based upon the existence of the later will. Curtis filed an answer to Robert's petition that generally denied the allegations of the petition but raised no affirmative defenses. Although Curtis did not specifically plead in his answer that the September will was invalid because of undue influence, the extensive discovery that followed left no doubt that undue influence formed the basis of Curtis' contentions.
During a five-day bench trial, both parties presented evidence in support of their respective contentions, including the issue of undue influence. Although some of the testimony was in conflict, most of the evidence was not contradicted, and the factual disputes stemmed largely from the inferences to be drawn from the evidence. The trial judge entered judgment denying Robert's petition for revocation on the ground that the Langford family members had used undue influence to procure the September will. The judge specifically found that they had "failed to come forward with a reasonable explanation for their active roles in decedent's affairs," apparently concluding that they had not overcome the presumption of undue influence. Robert appeals that judgment.

II.
Appellant first argues that the trial court erred in accepting evidence of undue influence and resolving the case on *967 that issue because the defense of undue influence was not raised in the pleadings. There is no doubt that undue influence is an affirmative defense and thus required to be pleaded in this case. Fla.R.P. & G.P. 5.010 provides that probate proceedings shall be governed by the Probate Rules and that "The Florida Rules of Civil Procedure apply only as provided herein." Under Rule 5.025(a) a proceeding for revocation of probate of a will is an adversary proceeding. Rule 5.025(d) requires that, after service of formal notice of the adversary proceeding, the proceeding shall be conducted similar to suits of a civil nature and the Florida Rules of Civil Procedure shall govern, including the entry of defaults. Under Fla.R.Civ.P. 1.110(d), a party is required to "set forth affirmatively ... matter constituting an avoidance or affirmative defense." An affirmative defense is any matter that avoids the action and that, under applicable law, the plaintiff is not bound to prove initially but the defendant must affirmatively establish. 40 Fla.Jur.2d Pleadings, § 159 (1982). Here, appellant, as the party petitioning for revocation of probate based on a later-executed will, had the initial burden of proving that the September will, which revoked all prior wills, was executed with the requisite formalities and thus superseded the probated March will; that done, the burden shifted to appellee to prove that the September will was invalid. § 733.107, Fla. Stat. (1987). See also Rule Fla.R.P. & G.P. 5.275 (implementing section 733.107 but adopted after this case was tried).
Appellee did not plead undue influence as an affirmative defense at any point in the proceedings. He never attempted to amend the pleadings to raise this issue either before or during trial. It is well settled that an affirmative defense must be pleaded or it is waived. Kersey v. City of Rivera Beach, 337 So.2d 995 (Fla. 4th DCA 1976); Fla.R.Civ.P. 1.140(h). However, if the parties try an affirmative defense by express or implied consent, it will be treated as if it was raised in the pleadings. Garrett v. Oak Hall Club, 118 So.2d 633 (Fla. 1960); Fla.R.Civ.P. 1.190(b).
A careful review of the record in this case shows that the issue of undue influence was thoroughly litigated by the parties. Appellant was fully apprised of the fact that undue influence was appellee's primary defense theory, and, although appellant expressed some objections, he elicited testimony on this issue in his primary case, as well as in rebuttal. The record does not demonstrate that appellant was prejudiced by the trial of this issue in the absence of formal amendment to the pleadings, and on this record the trial court would have been required to grant leave to amend had appellee so moved. We agree with appellee that the undue influence issue was obviously tried with the implied consent of the appellant and decline to reverse the judgment on this ground. Cf. Ironman v. Rhoades, 493 So.2d 1097 (Fla. 4th DCA 1986).

III.
We next address appellant's argument on the sufficiency of the evidence to sustain the finding of undue influence. Any analysis of this issue necessarily begins with the supreme court's decision in In Re Estate of Carpenter, 253 So.2d 697 (Fla. 1971). Under that decision, Curtis, as the person who contested the validity of a will on the ground of undue influence, had the burden of proof throughout the proceeding. This contestant, however, could be aided in carrying this burden by a presumption of undue influence said to arise upon a showing that the opposing parties (1) occupied a confidential relationship with the decedent, (2) were substantial beneficiaries under the will, and (3) were active in procuring the execution of the contested will. E.g., Carter v. Carter, 526 So.2d 141 (Fla. 3d DCA), rev. denied, 536 So.2d 243 (Fla. 1988). Once the presumption was validly raised, the opposing beneficiaries bore the burden of explaining their active involvement in the preparation of the will; but they did not have to disprove undue influence, for if their explanation was reasonable, the presumption vanishes and the court must then determine whether the contestant has established undue influence by the greater weight of the evidence. *968 E.g., Ballard v. Ballard, 549 So.2d 1176 (Fla. 2d DCA 1989); Jordan v. Noll, 423 So.2d 368 (Fla. 1st DCA), rev. denied, 430 So.2d 451 (Fla. 1983); Tarsagian v. Watt, 402 So.2d 471 (Fla. 3d DCA 1981); Williamson v. Kirby, 379 So.2d 693 (Fla. 2d DCA 1980). Under Carpenter, the court may infer from the evidence giving rise to the presumption that the beneficiaries exercised undue influence over the decedent, but the cases cited above make it abundantly clear that evidence sufficient to raise the presumption does not require the trial court or the appellate court to conclude that the will was procured by undue influence. The court below found the evidence sufficient to raise the presumption of undue influence and concluded that the beneficiaries explanations were insufficient to overcome it. This ruling was error for the following reasons.
Initially, we express considerable doubt that the evidence was sufficient to raise the presumption of undue influence. In view of the fact that Anava had asked her brother Fred, a lawyer to whom she looked for legal advice, to prepare the March will, it was not unexpected that she would also request him to prepare any revised or changed wills thereafter. The fact that one of the three wills Fred prepared for her consideration was substantially consistent with the March will negates any inference that Anava was being made subject to any undue influence at Fred's instance; on the contrary, it suggests that Fred was leaving the decision to Anava in the exercise of her own free will. We have serious doubt that the conduct of Fred, or the conduct of Anava's other brothers and her niece, Elizabeth, constituted active procurement sufficient to raise the presumption in the first place. See Coppock v. Carlson, 547 So.2d 946 (Fla. 3d DCA 1989); Carter v. Carter, 526 So.2d 141.
We do not decide the case on this principle, however. Accepting the trial court's finding that the evidence was sufficient to raise the presumption, we find nothing in the record to suggest that the explanations offered by the Langford family members for their involvement in decedent's affairs were not eminently reasonable. Fred's conduct in drafting the several wills is but one example. Anava had always been close to her brothers and their families, and she loved them dearly as she did her husband Curtis. She looked to them for assistance from time to time as she did to her husband. They felt that Curtis was attempting to prevent Anava from changing the March will contrary to Anava's desires, referring to various steps taken by Curtis to curtail their contact with Anava, and explained they were only trying to help Anava do what she wanted to do in the face of active opposition to Anava by Curtis. We hold that the explanation offered by them was clearly sufficient to explain their activity with respect to Anava's execution of the September will and cause the presumption to disappear. Ballard v. Ballard, 549 So.2d 1176; Jordan v. Noll, 423 So.2d 368; Tarsagian v. Watt, 402 So.2d 471; Williamson v. Kirby, 379 So.2d 693. It was incumbent upon the appellee, therefore, to prove without the benefit of the presumption that the September will was the product of undue influence by appellant and other members of his family.
One asserting that a testamentary disposition was the product of undue influence bears a heavy burden. The "undue influence must amount to over persuasion, duress, force, coercion or artful or fraudulent contrivances to such a degree that there is a destruction of free agency and willpower." [Emphasis added.] Jordan v. Noll, 423 So.2d 368, 370 (Fla. 1st DCA 1980), citing Williamson v. Kirby, 379 So.2d 693. Hence, the crucial issue is whether the record before us contains evidence legally sufficient to support a finding that Anava McCormick's "free agency and willpower" were destroyed by the actions of appellant and other members of the Langford family at the time she made the September will. Even though Anava's brothers or niece may have "planted the seed" for her change in disposition of her estate from that set forth in the March will, proof of that fact alone does not satisfy the burden of proof. The evidence must also show that, having so planted the seed, *969 the brothers and niece exercised sufficient influence over her mind that Anava was deprived of her own free will when making the will. Several undisputed facts in the record establish that Anava was not so influenced when she met her Alabama attorney, Mark Murphy, and told him what to put in her will.
Apparently, the trial judge gave scant consideration and probative value to the uncontradicted testimony of attorney Murphy, although the findings in the final judgment indicate the judge accepted the credibility of this witness. Yet, Murphy's testimony provided the most important objective evidence probative of Anava's testamentary capacity and ability to exercise her will free of outside influence at the time she made the September will. In lengthy discussion with her prior to preparing the will, he found her to be mentally astute and alert even though physically weak and infirm. She manifested a clear grasp of what she wanted to do and gave a thoughtful explanation as to why she wanted to make the property disposition she made. She made specific devises to her husband of all property acquired during the marriage and owned by them jointly. Further, she explained that she wanted her brother Robert rather than Murray to serve as executor. And, most uncharacteristically for a lay person, she instructed Murphy to add additional powers for the executor in the language of the will. We cannot agree that this later change was insubstantial and purely cosmetic, and did not evidence her independence of will. We observe also that the evidence will not support a finding that attorney Murphy was a part of some scheme to impose his or the Langford family's will upon Anava McCormick to make her do their bidding, nor does the final order contain any such explicit finding.
Of equal importance is the undisputed fact that Anava's husband, Curtis, knew well in advance that Anava wanted to change her will; her making the new will came as no surprise to him. He lived with her almost constantly throughout this entire period, and expressed his opposition to any changes. In contrast, the family members who allegedly unduly influenced her free will met with her only sporadically during this entire time. Curtis alone drove Anava, at her request, to the attorney's office in late September so that she could make the new will. Understandably, he was upset at the prospect, and so stated to the attorney. This case, unlike most if not all other undue influence cases, does not present a factual scenario where the decedent was continually subject to a dependence upon and under the influence of the persons procuring the will naming them beneficiaries. Rather, here the contestant Curtis was with his wife almost constantly during the entire time period involved, and had equal if not greater opportunity to influence her will as did the members of the Langford family.
We conclude that this case is governed by the principle that a properly executed will "should be given effect unless it clearly appears that the free use and exercise of the testator's sound mind in executing his will was in fact prevented by deception, undue influence or other means." In re Estate of Carpenter, 253 So.2d at 704. Paraphrasing the holding in Tarsagian v. Watt, 402 So.2d at 472, this court is not free to treat lightly the decedent's manifested testamentary intent, whether she leaves her estate entirely to her husband, or divides it among her husband and her blood family; merely because her choice happens to bestow a substantial portion of her estate on her brothers and their family members rather than on her husband, whom she undoubtedly loved dearly, does not mean that her choice was not freely made, and unless the evidence shows that she has been precluded from freely exercising that choice, her wishes are to be respected. The evidence in the case before us falls substantially short of clearly indicating that Anava McCormick's "free agency and willpower" were destroyed by undue influence exerted by appellant and other Langford family members, and we are unwilling to thwart the dispositional intent she so clearly evidenced to her attorney and in her will. Ballard v. Ballard, 549 So.2d 1176; Jordan v. Noll, 423 So.2d 368; Williamson v. Kirby, 379 So.2d 693.
*970 The judgment below is reversed and the cause is remanded with directions to grant appellant's petition to revoke probate of the March will and to admit the September will to probate.
REVERSED AND REMANDED.
SHIVERS, C.J., and THOMPSON and ZEHMER, JJ., concur.
NOTES
[1] Besides disposing of decedent's property, this will named Murray Langford as her personal representative.