915 So.2d 235 (2005)
Barbara ZOLDAN, Appellant,
v.
Robert ZOHLMAN and Arthur Zohlman, as Co-Curators of the Estate of Charles Zohlman, Deceased, Appellees.
No. 3D03-2185.
District Court of Appeal of Florida, Third District.
November 30, 2005.
*236 D. Culver Smith III (West Palm Beach), for appellant.
Tescher Gutter Chaves Josepher Rubin Ruffin & Forman and Peter J. Forman (Boca Raton), for appellees.
Before COPE, C.J., and FLETCHER and WELLS, JJ.
FLETCHER, Judge.
This is an appeal of a final judgment declaring a post nuptial agreement between a husband and wife to be invalid because of undue influence. For the reasons which follow, we reverse in part and affirm in part.
Charles Zohlman[1] brought this action against his stepdaughter, Barbara Zoldan, individually and as personal representative of the estate of his late wife, Ida G. Zohlman, to revoke an agreement which he entered into with his wife on June 2, 1995. Charles also claimed a right to enforcement of several promissory notes in his favor by Barbara, individually and on behalf of her wholly owned company, Texas Work'n Western Boots, Inc.[2]
The claims were tried by the court without a jury resulting in the issuance of written findings of fact and conclusions of law on June 26, 2003. A summary of the trial court's findings include the following pertinent facts. Charles and Ida Zohlman were married in 1978. It was a second marriage for both of them. Charles had three sons from a first marriage and Ida had one daughter from her prior marriage. Charles was wealthy while Ida had limited assets. Throughout the marriage, Charles became close to Ida's daughter and her family. Beginning in the early 1990's and continuing through 1995, Barbara and her husband, Alex, experienced severe financial difficulty. To avoid foreclosure of their home, Charles loaned the couple $200,000 in late 1993 for which Barbara prepared and signed a promissory note in favor of Charles. Subsequently, Barbara, individually and as president of her company, signed promissory notes for loans in the amount of $150,000, $25,000, and $80,000 made to her company.
In July of 1993, Ida was diagnosed with cancer. Due to this illness, by early 1995 Charles and Ida, then 90 and 78, moved from Florida to reside with Barbara and her family in Westchester County, New York. During a visit from a long-time friend and financial advisor, the issue of the couple's estate plan arose. Upon being advised of Charles' intent to leave Barbara only $50,000 upon his death, Ida became enraged. She accused Charles of not doing right by her daughter and threatened divorce. After talking further with his friend and financial advisor, Charles concluded that including Barbara as a more substantial beneficiary in his estate was the right thing to do. Ida, however, was still distrustful of Charles and asked Barbara and her husband to assist her in determining her rights in the event of a divorce.
Barbara and her husband contacted Steven Frankel, a New York lawyer who had previously represented them in connection with the foreclosure of their home and other business matters. Frankel met with Charles and Ida and thereafter, together with Florida attorneys, prepared a will and trust agreement and a post nuptial agreement for Charles and Ida. As signed, the *237 post nuptial agreement required Charles to name Barbara an heir equal to his three sons in his will. More importantly, the agreement could not be amended or revoked without the consent of both parties. Charles claims this provision of the agreement was never fully explained to him. All documents were executed by Charles and Ida on June 2, 1995. Ida died on July 25, 1995, and Charles returned to Florida soon thereafter.
In early 1996, Charles consulted a Florida attorney about his estate plan. He made some amendments to his estate documents, none of which changed Barbara's status as his heir. Thereafter, Charles attempted to obtain payment on the promissory notes executed by Barbara. The Zoldans claimed the debts had been forgiven by Charles in an April 17, 1995 letter which stated that the notes would be forgiven upon Ida's death. Charles subsequently filed the instant action against Barbara to rescind the post nuptial agreement on the ground that he did not fully understand the irrevocable effect of the agreement, and for repayment of the promissory notes signed in connection with the loans to Barbara and her company.
Although stating that Barbara and Ida took unfair advantage of Charles during the period from late April through June 2, 1995 by improperly pressuring him through a combination of undue influence, by his reduced ability to properly think things through, by his concerns over Ida's illness, and by his fears that he would be abandoned, the trial court's conclusions of law focus on problems with Frankel's representation of Charles. According to the trial judge, Frankel failed to advise Charles of his prior representation of Barbara and Alex, he had a conflict of interest in representing both Charles and Ida, and he included the non-modifiable provision in the post nuptial agreement without fully discussing it with Charles and while knowing that Charles intended to favor his own sons over Barbara in his estate. In contrast, Ida's apparent "improper conduct" was her becoming upset with Charles upon learning of his initial testamentary intent as to Barbara, her threatening to divorce Charles, and her request that Barbara and Alex recommend an attorney she could consult. Barbara and Alex's "improper conduct" simply was their recommending and setting up the meetings with Frankel.
The Florida Probate Code provides that a will is void, either wholly or in part, if its execution is procured by fraud, duress, mistake, or undue influence. § 732.5165, Fla. Stat. (2003). The undue influence required for invalidation of a testamentary document is conduct amounting to duress, force, or coercion to such a degree that the free agency and willpower of the testator is destroyed. Mere affection and attachment or a desire to gratify the wishes of one who is esteemed or trusted may not alone be sufficient to amount to undue influence. E.g., In re Peters' Estate, 155 Fla. 453, 20 So.2d 487, 492 (1945); Derovanesian v. Derovanesian, 857 So.2d 240 (Fla. 3d DCA 2003), rev. denied, 868 So.2d 522 (Fla.2004); Raimi v. Furlong, 702 So.2d 1273, 1287 (Fla. 3d DCA 1997); Coppock v. Carlson, 547 So.2d 946 (Fla. 3d DCA 1989); and cases cited therein. After careful review, we conclude that the evidence presented below falls far short of proving such a degree of influence in this case. Barbara's actions were perfunctory activities in aiding her mother to obtain the assistance of counsel which she had requested. See Carter v. Carter, 526 So.2d 141 (Fla. 3d DCA 1988).[3]
*238 We therefore reverse the final judgment declaring the post nuptial agreement dated June 2, 1995 null and void, affirm the remainder of the final judgment, and remand for further proceedings in accordance with this opinion.
Reversed in part; affirmed in part.
NOTES
[1] Charles died after filing the action and his sons, Robert and Arthur Zohlman, were substituted as plaintiffs.
[2] Although Charles also included malpractice claims against the attorneys involved herein, these claims were severed and are not part of this appeal.
[3] We express no opinion on the actions of Frankel and the other attorneys as the claims of malpractice against them are not part of this appeal.