WELLS, Judge.
 

 Barbara Zoldan appeals from a final judgment determining the value of her interest in a limited partnership created pursuant to her now deceased step-father, Charles Zohlman’s estate plan. The sole issue raised in this appeal is whether the valuation method chosen by the court below to value this asset — -fair market value — was properly selected. Because this method of valuation is the appropriate method applicable in this ease, we affirm.
 

 This is the second appearance of this case before this court.
 
 See Zoldan v. Zohlman,
 
 915 So.2d 235 (Fla. 3d DCA 2005)
 
 (“Zoldan I
 
 ”). In
 
 Zoldan I,
 
 we addressed Charles Zohlman’s claim that a post-nuptial agreement that he and his former spouse, Ida, executed was void as the product of undue influence. There, we upheld the post-nuptial agreement in which Mr. Zohlman agreed “to name Barbara Zoldan [Ida’s daughter] an heir equal to his three sons [by a prior marriage] in his will.”
 
 [1]
 

 Following remand in
 
 Zoldan I,
 
 Ms. Zoldan brought suit to enforce the post-nuptial agreement against Mr. Zohlman’s pending estate. That Estate consisted primarily of a single asset: a trust, funded by Mr. Zohlman’s 99% interest in a limited partnership to which Mr. Zohlman had transferred some $40,000,000 in securities. This trust, contrary to the post-nuptial agreement, named only Mr. Zohlman’s three sons as beneficiaries. Shortly after our remand, the Estate tendered to Ms. Zoldan a 24.75% interest in the limited partnership that comprised the corpus of the trust, as well as an amount ($1,188,834) equal to that previously distributed to each of the other sons/beneficiaries. This resolution would have placed Ms. Zoldan in the same position as Mr. Zohlmaris three sons. However, Ms. Zoldan rejected these tenders in favor of seeking a damage award.
 
 [2]
 

 
 *984
 
 In March of 2007, a partial summary-judgment was entered in Ms. Zoldan’s favor entitling her to “money damages in an amount equal to the value of sharing in ... [the] estate equally” with the sons. Based on this determination, Ms. Zoldan sought not to be named as a beneficiary of the trust or a limited partner in the asset owned by the trust, but to be awarded her share (25%) of the “fair value” of the assets (the securities) owned by the limited partnership.
 

 Originally, the Estate disputed Ms. Zol-dan’s right to obtain anything other than what each of the three sons had inherited, i.e. an interest in the limited partnership. Eventually, however, the Estate took the position that if monetary damages were ordered, it was a “fair market valuation” that should be utilized in determining that award. The parties attached a dollar amount to each valuation method, concluding that the “fair market valuation” of the interest was $2,247,573, while the “fair valuation” of the interest was $6,450,937. Thus, by mutual agreement, the only question before the trial court was which valuation method should be applied.
 

 Following a trial on that sole issue, where only two expert witnesses testified, the court below determined that Ms. Zol-dan was entitled to the “fair market value” of the assets owned by the limited partnership and awarded her $2,247,573 in damages, plus pre-judgment interest. Ms. Zoldan appeals from that determination and award, which for the following reasons, we affirm.
 

 As a starting point, we agree with the Estate that under the now validated post-nuptial agreement, Ms. Zoldan is entitled to no more than the treatment accorded to Mr. Zohlman’s sons under his will and trust.
 
 See Sharick v. Se. Univ. of Health Scis., Inc.,
 
 780 So.2d 136, 139 (Fla. 3d DCA 2000) (observing that “[t]he purpose of compensation for a breach of contract is to place the injured party in the position he or she would have been in had the breach not occurred”). Under the terms of the will and trust, Ms. Zoldan and each of Mr. Zohlman’s three sons are entitled to receive a one quarter interest in Mr. Zohl-man’s trust, the corpus of which is comprised of Mr. Zohlman’s 99% limited partnership interest in Zohlman, Ltd.
 

 That limited partnership interest is governed by the terms of a written agreement,
 
 [3]
 
 which sets out with specificity the nature of the interests created on the death of a limited partner:
 

 Death of Limited Partner
 

 11.03. Upon the death of a Limited Partner, his or her interest will pass to his or her heirs or legatees. The beneficiaries will then be entitled to the rights of an assignee as i[s] provided in Paragraph 11.02(3) above.
 

 Paragraph 12.02 of the partnership agreement provides that the death of a limited partner “shall have no effect on the life of the Partnership, which shall contin
 
 *985
 
 ue,” and paragraph 11.02(3) confirms that the assignee of a partnership interest is entitled only to share in partnership profits:
 

 Any assignment made to anyone not already a Partner shall be effective only to give the assignee the right to receive the share of profits to which the assign- or would otherwise be entitled.... The assignee shall not have the right to become a substituted Limited Partner.... The Partnership shall continue with the same basis and capital account for the assignee as was attributable to the former owner who assigned the Limited Partnership interest....
 

 Despite the limited nature of the assigned interests at issue, Ms. Zoldan argues that she should be treated as “a withdrawing partner.” This, we believe, is exactly what the trial court did.
 

 While the partnership agreement does not permit a limited partner to withdraw and demand distribution from the partnership, Mr. Zohlman’s sons, one of whom is the general partner with “sole and exclusive control of the Limited Partnership,” nevertheless agreed to distribute to Ms. Zoldan the “fair market value” of a one quarter interest of Mr. Zohlman’s 99% limited partner interest in the partnership, i.e., the amount a full limited partner would receive if that partner took the interest and attempted to sell it on the open market.
 
 [4]
 

 See Rothschild v. Kisling,
 
 417 So.2d 798, 801 (Fla. 5th DCA 1982) (recognizing that fair market value is generally “what a willing buyer would pay a willing seller” for an interest). Such a distribution would be consistent with paragraph 12.03 of the partnership agreement which provides that although “[n]o Partner shall be entitled to demand a distribution be made in partnership Property ... the General Partner may make or direct property distributions to be made, using the property’s fair market value as of the time of the distribution[ ] as a basis for making the distribution[ ].”
 

 It would also be consistent with that portion of the partnership agreement governing permitted sales of limited partnership interests, which obligates limited partners to establish the market value of their interests by obtaining a bona fide offer from a willing buyer in the marketplace:
 

 Permitted Sales
 

 11.02 (1) In the event a Limited Partner receives a bona fide offer for the purchase of all or a part of his or her interest in the Partnership, the Limited Partner shall either refuse the offer or give the General Partner written notice setting out full details of the offer. The notice, among other things, shall specify the name of the offeror, the percentage of interest in the Partnership covered by the offer, the terms of payment, whether for cash or credit, and, if on credit, the time and interest rate, as well as any and all other consideration being received or paid in connection with the proposed transaction, and any and all other terms, conditions, and details of the offer.
 

 (2) Upon receipt of the notice with respect to an offer, the General Partner shall have the exclusive right and option, exercisable at any time during a period of thirty (30) days from the date of the notice, to purchase the interest in the Partnership covered by the offer in
 
 *986
 
 question at the same price and on the same terms and conditions of the offer as set out in the notice. If the General Partner decides to exercise the option, it shall give written notice to that effect to the Limited Partner desiring to sell. The sale and purchase shall be consummated within thirty (30) days after the date of the written notice. If the General Partner does not elect to exercise its option or waive his rights in writing, the selling Limited Partner shall be so notified in writing. Subject to any prohibitions or restrictions on transfer imposed by the General Partner for purposes of compliance with applicable securities law, the Limited Partner shall then be free to sell the interest in the Partnership covered by the office. The sale must be consummated within ninety (90) days thereafter, or the interest shall once again become subject to the restrictions of this Article. The sale, if permitted, shall be made strictly on the terms and conditions and to the person described in the required notice.
 

 Here, the stipulated fair market value of Ms. Zoldan’s interest was put at $2,247,573. Based on the foregoing analysis, we find no error in the methodology used to make this determination.
 

 We also reject the notion that there was no competent, substantial evidence to support the trial court’s determination that Ms. Zoldan’s interests should be valued using the fair market value method. The Estate presented the expert testimony of David Pratt, a seasoned trust and estate lawyer, who testified that fair market value is the valuation standard used when distributing trust assets and the assets of an estate. More specifically, Pratt testified that fair market value is the exclusive valuation method used for the purpose of determining distributions from a limited family partnership that is part of a trust or an estate.
 

 Thus, we find no error in the valuation method used by the trial court. The promise made and broken was that Mr. Zohlman name Ms. Zoldan an heir equal to his three sons. Ms. Zoldan was offered and rejected an interest in the limited partnership which would have put her in the exact same position as the Zohlman brothers. Having rejected that offer, the Estate maintained that the measure of Ms. Zoldan’s damages would be the “fair market value” of the interest she rejected. With no dispute as to the dollar amount attached to the use of a “fair market valuation,” with that method being identified in the partnership agreement itself, and with that valuation method being supported by expert testimony, we conclude that it was properly employed. Accordingly, we find the trial court’s order was correct in its entirety, and affirm the order awarding Ms. Zoldan $2,247,573, plus pre-judgment interest.
 

 [1]
 

 . That appeal also resolved Mr. Zohlman’s right to enforce a number of promissory notes executed by Ms. Zoldan. Therein, we upheld the lower court's determination that the promissory notes were not enforceable.
 
 Zoldan I,
 
 915 So.2d at 238.
 

 [2]
 

 . Specifically, Ms. Zoldan sought to enforce the post-nuptial agreement against Mr. Zohlman's estate claiming that: (1) "Zohlman breached the Prenuptial Agreement by failing to name Zoldan as a residuary beneficiary under his estate-planning documents such that she [sh]ould share equally in his estate with his own children, per stiipes”; (2) "if Charles Zohlman had named her as a residual beneficiary of his estate equal to his three sons [as required by the Prenuptial Agreement], she would be, and would have been from the date of Charles Zohlman's death, a 25% residuary beneficiary under the Zohlman Trust”; and (3) had she been properly named
 
 *984
 
 as a residual beneficiary as required by the Prenuptial Agreement, she "would have been entitled to an outright distribution of an interest equal to 25% of the assets of the Zohlman Trust.”
 

 [3]
 

 .
 
 See
 
 8B Fla. Jur.2d Business Relationships § 698 (2008) (footnote omitted) (emphasis added) ("The Florida Revised Uniform Limited Partnership Act of 2005 expressly establishes the relationship between the legal framework for limited partnerships and the internal regulation of such partnerships, i.e., the partnership agreement. First, the Act states that
 
 a duly drafted partnership agreement generally governs relations among the partners and between the partners and the limited partnership.")-,
 
 §§ 620.1101 — .2205, Fla. Stat. (2008).
 

 [4]
 

 .
 
 See
 
 § 620.144, Fla. Slat. (1997) (providing that “upon withdrawal, a withdrawing partner is entitled to receive any distribution to which he is entitled under the partnership agreement,” with “fair value” to be employed only in instances when "not otherwise provided in the agreement”).